TILLEY *et ux. v.* AMERICAN BLDG. & LOAN ASS'N.

*(Circuit Court, W. D. Arkansas.* October 31, 1892.)

1. BUILDING AND LOAN ASSOCIATIONS—LOANS TO MEMBERS ON STOCK—USURY.
    T. subscribed for 600 shares of stock in the American Building & Loan Association, having its business headquarters at Minneapolis, Minn. By his contract and by the by-laws of the association he was to pay $360 per month as dues on the 600 shares of stock, or $4,320 per year, or $38,880 in nine years. Desiring an advancement or loan on his stock, he made an application to the association to advance him $30,000 on his stock, which was done. By the contract he was to pay 6 per cent. interest per annum on the same. In considering the question as to whether the loan was a usurious one under the laws of Arkansas, payments to be made by T. on account of his stock are not to be considered as interest on the $30,000 borrowed, and not to be computed as such, since such payments are not made for the use of the money borrowed, but in order to acquire an interest in the nature of a partnership interest in the property of the association.

2. EQUITY—RELIEF AGAINST UNCONSCIONABLE STIPULATIONS—PENALTY OR LIQUIDATED DAMAGES.
    If a contract is either founded in fraud, imposition, mistake, or when it works a hardship, or is harsh upon a party to it because it gives the other party to it an undue advantage, in a suit to enforce it, when a defendant comes into court and asks affirmative relief as is in harmony with equity and good conscience may be afforded him, when the contract is in the nature of a partnership, because the defendant in effect prays a dissolution of the partnership, and the court will ascertain the true interests of the parties, and will make such a decree as is just and right, upon the ground that a court of equity will take every one's act according to conscience, and will not suffer undue advantage to be taken of the strict terms of the law, or of positive rules, and will refuse to enforce the contract. Or, if the court can consider the amount named in the contract as a penalty, rather than liquidated damages, when the payment of money is the principal object of the contract, and the amount named is only accessory thereto, it will afford such relief as is just and proper, when full compensation can be readily ascertained.

3. SAME.
    When the sum named in an agreement is to secure the performance of a collateral object, to wit, the payment of money, and that is the principal object, and the sum named is only collateral thereto, and the real damages would be disproportionate to the sum named, and such real damages can be readily ascertained, then a court of equity will consider the sum named as a penalty, and will afford such relief as in equity and good conscience is appropriate, considering the real injury sustained.

4. SAME.
    Courts of equity will not permit parties to fix a sum specified in a contract as liquidated damages by naming it as such, and thus prevent the court from considering it as a penalty.

*(Syllabus by the Court.)*

In Equity. Suit by J. L. Tilley and Vesta Tilley, his wife, against the American Building & Loan Association, to cancel a bond and mortgage executed by plaintiffs to defendant. Defendant filed an answer and a cross bill asking a decree for the amount claimed to be due to it, and foreclosure of the mortgage. Decree for defendant for the amount advanced by it on the bond and mortgage and foreclosure of the mortgage therefor, and for cancellation of the remaining part of the contract.

*Tabor, Humphries & Silverman* and *Rogers & Read*, for plaintiffs.
*Sandels & Hill* and *Chas. M. Cooley*, for defendant.

PARKER, District Judge. This is a suit in equity to cancel a bond containing a contract between plaintiffs and defendant. The plaintiffs, by the terms of said bond, acknowledged themselves to be indebted to the defendant in the sum of $60,000, for the payment of which they bound themselves. It was stipulated in said bond that if the said plaintiffs should pay or cause to be paid unto the defendant association, as its home office in the city of Minneapolis, state of Minnesota, on or before 9 years from the date thereof, the sum of $60,000, being the amount of the said advancement and premium bid, with interest on $30,000, being the amount actually advanced, at the rate of 6 per cent. per annum from October 7, 1889, payable monthly; or if they should pay or cause to be paid to the defendant association at its home office as aforesaid the sum of $360 on the 21st day of each and every month thereafter, as and for the monthly dues on the said J. L. Tilley's 600 shares of the capital stock of said defendant association, and should pay all the installments of interest as aforesaid, and all fines which should become due on said stock, until said stock should have become fully paid in and of the value of $100 per share, and should then surrender said stock to said association,—the obligation should then become null and void. It was further expressly agreed that, if at any time default should be made in the payment of said interest or of the said monthly dues on said stock for the space of six months after the same or any part thereof should become due, then the whole principal sum aforesaid should, at the election of said defendant association, immediately become due and payable, and that the sum of $38,880, less whatever sum had been paid to said association, as and for the monthly dues on said 600 shares of said capital stock at the time of said default, might be enforced and recovered at once as liquidated damages, together with, and in addition to, all interest and fines then due. The enforcement of the contract was secured by a mortgage of even date with the above-named bond, given by plaintiffs upon a large amount of their real estate situated in Sebastian county, Ark., and fully described in the mortgage. It is claimed by plaintiffs that both the bond and mortgage are null, for the contract in the bond was void, because it is a contract for a greater amount of interest than 10 per centum per annum, and that the same, under the laws of the state of Arkansas, is usurious and void, and should be held for naught, and canceled; that the mortgage should also be canceled because given to secure the enforcement of a void contract; and that the same casts a cloud upon the title of the plaintiffs' real estate. The defendant claims that the contract is not usurious under the laws of the state of Arkansas, for the reason that the plaintiff J. L. Tilley became a member of the defendant association before the loan was made to him. The defendant association files its answer and cross bill. It therein asks for affirmative relief, to wit, a decree against the plaintiffs for the sum of $34,560, being the sum of $38,880, the total amount of nine

years' dues, less $4,320, the amount of one year's dues, paid by plaintiff J. L. Tilley in advance. Defendant also asks for interest on the $30,000 from October 7, 1890, at the rate of 6 per centum per annum, and fines at the rate of $60 per month from and including July 21, 1890; and, further, that the mortgage be foreclosed; that the plaintiffs be barred of any equity of redemption; and that the premises so mortgaged be sold, or so much thereof as may be necessary, and the proceeds applied to the payment of defendant's debt.

From the evidence it appears that on June 17, 1889, J. L. Tilley, one of the plaintiffs, made his written application for membership in the defendant association, and subscribed for 600 shares of the capital stock of said association. That said application was on the 21st day of June, 1889, duly approved and accepted by the board of directors of defendant. That it, by its proper officers, on the 21st of June, 1889, issued to J. L. Tilley a certificate of stock for 600 shares of the capital stock of said association. That the same was duly delivered and accepted by the said J. L. Tilley. That by such acts of the defendant association and J. L. Tilley he became, on June 21, 1889, a member of said association. By the terms of said certificate of stock, and the rules, regulations, and by-laws of said corporation, the said plaintiff J. L. Tilley was required and agreed to pay as dues to the defendant association, on or before the 21st day of every month from the date of said certificate, the sum of 60 cents on each share of stock subscribed and held by him, until such stock should be fully matured and of the value of $100 per share, or be withdrawn. Sixty cents dues on each share of stock is $360 per month on 600 shares, which would be $4,320 for one year on that amount of stock, and $38,880 for nine years. That on June 27, 1889, the plaintiff J. L. Tilley made to the defendant association his application for an advancement of $30,000 on his 600 shares of the capital stock in the association. That he bid as a premium for the privilege of obtaining said advancement the sum of $50 per share. That this was done in accordance with the by-laws, rules, and regulations of the defendant. That the same was accepted by the defendant's board of directors, and the advancement applied for was duly made to Mr. Tilley, and that amount of money was paid him. He agreed to pay as interest on said advancement the sum of 6 per centum per annum. He paid out of this loan, as an admission fee, which went to the promoter of this company, Mr. Hurd, the sum of $600. He paid also out of this loan the sum of $4,320 as one year's dues on the 600 shares paid in advance, and he paid out of the loan the sum of $1,800, the first year's interest at 6 per centum on the advancement of $30,000. The defendant discounted the advanced payment of dues and interest. There is no doubt that the advancement of $30,000 was made by defendant to J. L. Tilley on the faith that he would, in accordance with his contract, as shown by his bond, continue the monthly payment of dues on his 600 shares of stock until such stock should have fully matured,—that is, worth 100 cents on the dollar,—which, by estimate, would occur in nine years. It might occur sooner, although nine years seems by the

contracting parties to be considered as the time when the stock should fully ripen.

There can be no question in my mind that Mr. Tilley at the time of securing the advancement of $30,000 was a member of the defendant association. That, in order to secure said loan, he bid $50 per share on his stock subscribed. This was, in effect, a sale of his stock back to the defendant for $50 per share, Tilley agreeing to pay 6 per cent. interest on the amount advanced to him. In addition to the payment of this 6 per cent. interest, which on the $30,000 would be $1,800 per year, he agreed to pay $360 per month dues on his stock, which would be $4,320 per year, or $38,880 for nine years. He agreed to pay all fines assessed against him by the company for the nonpayment of dues. He was promptly to pay each month the 6 per cent. interest on the $30,-000 advanced. The defendant, in effect, when Tilley executed his contract with it, already owned his stock, for he conveyed it to the defendant, as expressed in the bonds, to secure the faithful performance of the obligations of the contract. And then he agreed to surrender the stock to the defendant for cancellation, when the same is fully paid up, and is of the value of $100 per share. Mr. Tilley further agreed by his bond, if default was made in the payment of his monthly dues on his 600 shares of stock for the period of six months, that the whole of the dues, to wit, $38,880, that by the terms of the contract were to be paid only so much per month and so much per year during the period of nine years, it might be, and the interest on the $30,000 advanced, which was to be paid so much per month and so much per year, should at once become due and payable at the election of defendant as liquidated damages. Much has been said in the argument and brief of counsel filed in this case about whether it is a contract governed by the laws of this state or by the laws of the state of Minnesota. I am inclined to the opinion from the facts in the case that it is a contract governed by the laws of Arkansas. But, with my view of Mr. Tilley's relations to this association, and of the effect of this contract, I do not consider that the contract is usurious under the laws of this state, for the reason that at the time that he secured the advance or loan of $30,000 the same was an advancement made to him on the 600 shares of stock as a member of the association. The $30,000 loaned to him, with 6 per cent. interest thereon, was considered as the present value of his stock, and the defendant loaned him this much on the stock, he agreeing to pay 60 cents on each share of stock each month to keep the same alive. Upon this agreement alone there could be no taint of usury. So far it could not be considered usurious. But if we are to consider what Tilley was to pay on account of his stock, called "dues" in the contract, as a payment made by him for the use of the $30,000, then there is usury in the contract. But I do not think the true rule of interpretation will authorize us to interpret the contract in that way, but that its true meaning is that Tilley was to pay the stipulated dues to acquire an interest in the property of the association. When Mr. Tilley became a borrower he occupied a double relation to the association,—that of a

borrower and a shareholder. If he was a shareholder alone, he would pay for his stock on the same terms as though he had become a borrower as well as a shareholder. The two relations are consistent. If he had not become a borrower, when his stock matured he would withdraw from the association its full value. But when he becomes a borrower he uses his stock to pay his debt with. In a contract of this kind, whether or not the debt is tainted with usury will depend upon the amount agreed in good faith to be paid as interest on the sum made as a loan or advancement on the stock. *Reeve* v. *Association,* (Sup. Ct. Ark.) 19 S. W. Rep. 917; *Taylor* v. *Association,* Id. 918; *Association* v. *Abbott,* (Tex. Sup.) 20 S. W. Rep. 118. If a so-called "payment of dues" on stock is a mere device to cover the payment, for the use of money, of more than the law recognizes as legal interest, of course the contract is a usurious one. It is claimed that the payment of dues on stock was, in this contract, a mere device to cover usury. I do not think the interpretation of the contract will warrant that conclusion. It may be a hard contract for Tilley and wife. It may be unfair to them. It may be one-sided, unjust, unconscionable, or affected by any other inequitable feature, and still not be usurious. I reach the conclusion that the advancement made to Tilley by the defendant association is a dealing in partnership funds. This view is supported by high authorities, both English and American. *Silver* v. *Barnes,* 37 E. C. L. 571; *Burbidge* v. *Cotton,* 8 Eng. Law & Eq. 57; *Shannon* v. *Dunn,* 43 N. H. 194; *Pattison* v. *Association,* 63 Ga. 373; *Parker* v. *Association,* 46 Ga. 166; *Delano* v. *Wild,* 6 Allen, 1. This loan or advancement was made to Tilley on the pledge of the shares of the association. In such a case the statutory rule for computing interest on partial payments has no application to the monthly dues paid on the shares so pledged, and such payments do not bear interest, or in any way reduce the amount on which interest is to be paid. *Reeve* v. *Association, supra.* The contract may be considered valid, because it was a dealing in partnership funds in such a way that the transaction was one where there was a sale of shares in anticipation of their ultimate value, or an advancement by the association to the member thereof of the matured value of his shares. This view of the nature of this contract will prevent the conclusion that it was tainted with usury. It really, therefore, becomes unnecessary to pass on the question whether it was a contract governed by the usury laws of Arkansas.

Mr. Tilley, for the sake of getting a loan of $30,000 for nine years, agreed to pay interest at the rate of 6 per cent. for that time, making $16,200 he was to pay as interest, and in shape of dues on his stock subscribed he was to pay in the course of nine years $38,880 in monthly installments at the rate of $360 per month,—making a total sum he was to pay the association at the end of nine years of $55,080, aside from fines that might be assessed against him for not promptly paying his dues; and for these large sums of money he gets $30,000 advanced to him at the time of the contract. Then the $38,880 to be paid in dues is not paid at the end of the nine years, but its payment is monthly from the execution of the contract. The association may derive large bene-

fits during the nine years from these dues so paid in advance in the shape of interest. But Mr. Tilley is to have none of this benefit, as he, by the contract, is to deliver up his stock to be canceled, and is to have nothing but the $30,000. It is equity and justice that Tilley should pay back the $30,000 advanced to him, with interest on the same at 6 per cent., because he received this amount of money from defendant, and used the same. His mortgage should be foreclosed to enforce the payment of the above amount; but in view of the nature of this contract in reference to the amount of dues to be paid, and the time of their payment, and of the further fact that the contract puts it in the power of the defendant to declare the whole of the $38,880 of dues to be due at once on the failure of Tilley for six months to pay dues, should Tilley be required to do more than this? Should he be required to pay the $38,880, which he agreed to pay to secure an advancement of $30,000, and agreed to pay in such a way as that defendant should make a large profit out of it, in which Tilley was to have no share, for he was to have no interest whatever in any gains arising from the monthly payment of his dues? I consider that the mere statement of the contract, as affecting Tilley, shows it to be a hard one, and one which conferred on the association large benefits.

Can the court afford him any relief in the face of his contract? If we consider the contract, as we should do,—as one dealing in partnership funds,—when the defendant comes into a court of equity and asks for the relief it prays for in this suit, does not this conduct of defendant in effect work a dissolution of the partnership relation? Is it not to be taken by the court as a determination by defendant to have that relation broken up? If so, may not a court of equity make such a decree touching the funds of the partnership, as affecting Tilley and this defendant, as justice and good conscience should require? This is a ground upon which a court of equity may stand, and do the very right in the premises. Again, if this contract is grossly unreasonable and harsh, cannot relief be had by the court refusing to enforce that part of it which is grossly unreasonable and harsh? It seems to me, for the reasons above named, that the contract providing for the payment—it may be, in six months after its execution—of the $38,880, and 6 per cent. interest on the $30,000, and $60 per month as fines upon 600 shares of stock for nonpayment of dues, is unfair to the plaintiff Tilley; that it is to the above-named extent largely one-sided as to him, and therefore unjust and unconscionable. It thus becomes inequitable to the extent of the part providing for the payment of $38,880 as dues, it may be, shortly after the making of the contract; that its enforcement to the extent of collecting that sum from him would be oppressive and hard on him, and would work an injustice against him. If this was a suit for the specific performance of the contract, and such facts existed, the court would certainly exercise a sound discretion, and a specific performance would be refused. When the suit is to recover on a contract that is of the above nature, to enforce the payment of a stipulated amount, growing out of an inequitable and harshly unjust contract, in

justice and equity, why should not the same rule prevail? The oppression and hardship in this case results from the contract itself. I think the rules applicable—if this was a suit to enforce specific performance of this contract—apply when the defendant comes into a court of equity, and by cross bill asks affirmative relief on the contract. The court may exercise a sound discretion, and refuse to give such relief as to such part of the contract as shall appear to be harsh, oppressive, and unjust. The principles announced in the cases where specific performance is asked should be applicable where the contract is sought to be enforced by the collection of that which results from its oppressive and unjust provisions. As remarked by Mr. Justice BRADLEY in *Railroad Co.* v. *Cromwell*, 91 U. S. 643:

"The court is not bound to shut its eyes to the evident character of the transaction. It will never lend its aid to carry out an unconscionable bargain. This has been so often held on bills for specific performance and in other analogous cases that it is unnecessary to spend argument on the subject."

If this was in a court of law, it would have to give judgment for the whole of the $38,880 and the 6 per cent. interest on the $30,000, and the amount due in the shape of fines, because it is so denominated in the bond. But it is a court of equity, and it can do what conscience, equity, and justice demand shall be done, and give such relief as these guardians of right demand shall be given. In *Willard* v. *Tayloe*, 8 Wall. 557, Mr. Justice FIELD said:

"In general, it may be said that the specific relief will be granted when it is apparent from a view of all the circumstances of the particular case that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties."

The English authorities referred to in the above case fully sustain the principles therein declared. Mr. Story, in section 750 of his Equity Jurisprudence, says:

"Indeed, the proposition may be more generally stated, that courts of equity will not interfere to decree a specific performance except in cases where it would be strictly equitable to make such a decree."

Again, at section 750a, he says:

"Upon grounds still stronger, courts of equity will not proceed to decree a specific performance when the contract is founded in fraud, imposition, mistake, undue advantage, or gross misapprehension. * * *"

Again, at section 331, he says:

"And here we may apply the remark that the proper jurisdiction of courts of equity is to take every one's act according to conscience, and not to suffer undue advantage to be taken of the strict forms of law or of positive rules. Hence it is that, even if there be no proof of fraud or imposition, yet if, upon the whole circumstances, the contract appears to be grossly against conscience, or grossly unreasonable and oppressive, courts of equity will sometimes interfere, and grant relief."

Mr. Pomeroy, in his Equity Jurisprudence, (section 1404,) when referring to classes of contracts named in a previous section, says:

"The object of the foregoing paragraph is to formulate the general rule which determines the classes of contracts in which the equitable jurisdiction may be exercised. But even when a particular contract belongs to such a class, the right to its specific performance is not absolute, like the right to recover a legal judgment. The granting the equitable remedy is, in the language ordinarily used, matter of discretion, * * * controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case."

The above principles are fully sustained by *Seymour* v. *Delancey*, 6 Johns. Ch. 222, and the many English authorities referred to in the case, as well as the American authorities referred to in the notes to the same. Mr. Pomeroy, in his Equity Jurisprudence, in his note to section 1405, says:

"If, then, the contract itself is unfair, one-sided, unjust, unconscionable, or affected by any other inequitable feature, or if its enforcement would be oppressive or hard on the defendant, or would prevent the enjoyment of his own rights, or would work any injustice, * * * its specific performance will be refused."

In note 1, on page 449, he says:

"This rule generally operates in favor of defendants, but may be invoked by a plaintiff when a defendant demands the remedy by a counterclaim or cross complaint. The oppression or hardship may result from the uncon scionable provisions of the contract itself."

There is still another method which may be adopted by the court to enable it to grant just such relief as equity and justice may require. It is to consider the $38,880 named in the bond a penalty to secure the performance of a collateral object, to wit, the payment of money advanced, and not as liquidated damages, although named as such in the bond. The payment of money is the principal intent of the contract, and the amount named, to wit, $38,880, is only accessory thereto, and therefore only intended largely to secure the payment of the amount advanced. If the amount prayed for is given, the damages would be disproportionate to the nature of the injury sustained. Full compensation can be readily ascertained and made in equity. When the above conditions exist, the amount named in the bond, although designated as "liquidated damages," may be considered by a court of equity as a penalty, and the court may afford such relief as equity and good conscience demand. Courts of equity will not permit their jurisdiction to be evaded merely by the fact that the parties have called a sum "liquidated damages," which in fact may be considered as a penalty. Here, then, the sum named is in excess of the probable injury. The real injury may be ascertained, and full compensation can readily be made, and therefore full and adequate relief can be afforded in equity. When such conditions exist, courts of equity will consider the sum named a penalty, rather than liquidated damages, and give the proper relief. The above rule is sustained by sections 381, 433, Pom. Eq. Jur. Judge Story, in section 1314 of his Equity Jurisprudence, says:

"The general principle now adopted is that, whenever a penalty is inserted merely to secure the performance of the enjoyment of a collateral object, the

latter is considered as the principal intent of the instrument, and the penalty is deemed only as accessory, and, therefore, as intended only to secure the due performance thereof of the damage really incurred by the nonperformance. In every such case, the true test, generally, (if not universally,) by which to ascertain whether relief can or cannot be had in equity, is to consider whether compensation can be made or not. If it cannot be made, then courts of equity will not interfere; if it can be made, then, if the penalty is to secure the mere payment of money, courts of equity will relieve the party on paying the principal and interest."

Sedgwick on Damages, § 407, says:

"In every case where a fixed sum is stipulated as damages the court will look to see whether the stipulated compensation is a reasonable one; and, if not, they will require damages to be assessed, as if no stipulated sum was named in the contract."

Speaking of the way courts have regarded this question, he continued:

"All seem to agree upon the principle that the stipulated sum will not be allowed as liquidated damages unless it may fairly be allowed as compensation for the breach."

The supreme court of Michigan, in *Myer* v. *Hart*, 40 Mich. 517–523, says:

"Just compensation for the injury sustained is the principle at which the law aims, and the parties will not be permitted by express stipulation to set this principle aside."

In *Harris* v. *Miller*, 11 Fed. Rep. 118, Judge DEADY says:

"When the contract is explicit that the sum named shall be considered as liquidated damages, the contract is to be enforced according to its terms, unless qualified by some other circumstance; as, when one agrees to pay a larger sum upon the failure to pay a smaller one, or when the damages resulting from the failure to perform a contract are certain, or can be reasonably ascertained by a jury. But whenever the contract is for the doing or not doing of a particular act or acts, and there is no certain pecuniary standard by which to measure the damages resulting from a breach thereof, an agreement to pay a stipulated sum as damages for such breach will be enforced literally."

In *Clark* v. *Barnard*, 108 U. S. 436, 2 Sup. Ct. Rep. 878, the above principle is fully recognized, and Mr. Justice MATTHEWS quotes the saying of Lord Chancellor MACCLESFIELD in *Peachy* v. *Duke of Somerset*, 1 Strange, 447: "It is the recompense that gives this court a handle to grant relief." In determining the character of the bond in this case there are two views that may be taken of it. We may without question consider the $60,000 named in it as a penalty, and the naming by the parties of the $38,880 as an attempt to fix the amount of injury or damages, upon the principle above mentioned; or we may consider the $38,880 as a penalty, bearing in mind that parties cannot deprive a court of equity of the right to consider the bond a penal one when the $60,000 is a penalty by naming the amount of injury sustained, provided the conditions exist which give a court of equity the right to go behind the designation of the party. Nor can they prevent the court from considering the $38,880 as a penalty when the conditions exist which give the court the right to disregard the designation of the parties.

I think in this case we may consider the $38,880 as a penalty, and we may go behind its designation, and see what the actual damages are, and award them. Then, either on the ground that this is a partnership transaction, the court may give such relief as is right and just, or on the ground that when the court has jurisdiction—has the case—it may refuse to enforce so much of the contract as is inequitable or harsh, or will work a hardship on the plaintiff J. L. Tilley; or, because the court may construe the sum named in the bond as a penalty, it may give such relief as may be responsive to the demands of equity and good conscience. The relief that would meet this demand would be to decree the amount of the $30,000 advanced, with 6 per cent. interest on the same, less the year's interest already paid in advance, and to decree the foreclosure of the mortgage given to secure the payment of the debt, and to cancel the remaining part of the contract; and such will therefore be the decree in this case.