CHARLES CRENSHAW v. JULIAN G. HEDRICK ET AL.

Delivered April 9, 1898.

### 1. Usury—Foreign Corporation and Contract.

The fact that a foreign corporation with whom a building and loan contract was made for the erection of a house in this State was chartered under the laws of Louisiana, where the note was made payable, and by the laws of which the contract was not usurious, will not prevent the enforcement here of the usury laws of this State, or the application of usurious interest payments to the satisfaction of the debt.

### 2. Building and Loan Association—Withdrawal—Application of Payments.

A member of a loan association is entitled to have stock payments made by him credited upon the amount of his loan, where he gave notice in writing for the withdrawal of his stock as required by the by-laws, and there is nothing in the contract of the parties which has worked a forfeiture of such right.

### 3. Same—Attorney Fees.

One who brings a building and loan association into court and contests all claim of indebtedness made against him is liable for 10 per cent attorneys' fees upon the amount recovered by the company, where such fee is provided for in the contract between them in case of legal proceedings.

### 4. Same—Fines Not Chargeable.

A building and loan association can not recover a sum imposed by it as fines upon the legal default of a member who gave notice for the withdrawal of his stock and claimed that the amount of his loan had been paid, when by crediting him with usurious interest exacted and stock payments, this claim was substantially true.

### 5. Same—Membership Fees—Application.

Membership fees paid by a member of a loan association are not, upon notice for the withdrawal of his stock, applicable upon the loan made to him by the association.

APPEAL from Grayson. Tried below before Hon. Don A. Bliss.

*Head, Dillard & Muse* and *Brown & Crenshaw*, for appellant.

*Dudley G. Wooten* and *J. W. Finley*, for appellees.

FINLEY, ASSOCIATE JUSTICE.—On July 10, 1896, the appellant filed his suit in the District Court of Grayson County against appellee, in which he alleged that he was the owner of fifty shares of stock in the defendant corporation. That on May 12, 1891, he borrowed of appellee $2500, for which he executed to it his note for the sum of $5000 of same date, due six months from date, with interest at $12.50 per month, and calling for the payment of $35 per month as monthly assessment upon stock. The note was secured by a deed of trust on property described in plaintiff's petition, situated in Grayson County, Texas, and further secured by lien on stock and installments paid in and to be paid in when the said contract was made in Grayson County, Texas; the question of the homestead was waived upon the trial of the said cause, and the issue confined to the question of usury, which was pleaded by plaintiff, alleging facts showing its usurious character. The writ of injunction was sued restraining sale under the deed of trust.

The defendant answered by general denial, and pleaded that the contract was not usurious under the laws of the State of Louisiana, where the appellee was incorporated, and where the obligation was payable. Defendant asked for a judgment for its debt, foreclosure of its lien, etc.

The plaintiff filed a supplemental petition in which he alleged the fact that there was a branch office in Sherman, Grayson County, Texas, and a local treasurer thereof elected to whom all payments were made by this plaintiff in said State and county.

Judgment was rendered by the court against plaintiff for the sum of $3648.75, foreclosing the lien upon the land described in plaintiff's petition and upon the stock, and ordering the same to be sold in satisfaction of said judgment; and further ordering that upon payment by plaintiff of $3462.50, interest and costs, he shall be entitled to withdraw said stock at its withdrawal value. Plaintiff excepted in open court and gave notice of appeal, and has duly prosecuted his appeal to this court.

There is no statement of facts in the record, the case being brought up on conclusions of fact and law filed by the trial judge. The said conclusions are as follows:

1. "On June 10, 1890, plaintiff subscribed for ten shares of stock of the defendant, and paid one dollar membership fee on each share. On the same date S. M. Luckett subscribed for forty shares of stock in the defendant corporation, and paid membership of one dollar per share. About July 1, 1890, before the said Luckett had paid anything to the defendant corporation, except membership fee, he sold and transferred his said stock to plaintiff for $20.

2. "The defendant corporation, the Southwestern Building and Loan Association, is and was on June 10, 1890, a corporation duly incorporated under the laws of the State of Louisiana, and had its domicile and principal office for business in the city of New Orleans in said State.

3. "The object and purpose for which the said defendant corporation was established were as follows: (a) To assist members who held stock in said corporation in building and purchasing homes; (b) to enable stockholders in said corporation to save and accumulate money and obtain reasonable interest thereon, and (c) to give to cities and towns where branches of said corporation should be established, the advantages and benefits of local building and loan associations. The charter of said corporation provides that a fund shall be accumulated from the monthly installments paid in on account of subscriptions to the capital stock, and from rentals, discounts, and interest on loans and other sources, and that this fund after deducting the expense fund provided for in this charter, shall be used for the purchase and sale of real estate, for the building, sale, and rental of homesteads and real estate, and for effecting loans upon mortgage securities within the United States of America; and as shares of stock in said corporation shall mature for paying off and liquidating the same, the defendant corporation's charter provides that each share of stock therein shall be of the face value of $100.

"Under said charter the said shares were divided into two classes,

current shares and single payment shares. Current shares were to be paid up in monthly installments of 70 cents per share. Single payment shares were to be issued on the payment of such sum as, when properly invested, would produce in the opinion of the board of directors of said corporation the full face value of said shares at the maturity of the series to which such shares belonged. At the close of each fiscal year the profits were to be proportioned and a dividend credited to the value of each share in force in such manner as the board of directors might determine; provided, that such dividend should not exceed the earned proportion of the profits belonging to and withdrawable by said share whenever any shares, by reason of the payment of account of subscription thereto, together with the addition of the profits, accumulations, and dividends, should be worth the par value of $100 each, the charter of said corporation provided that the shares so arrived at par or maturity should on the surrender of the certificates of stock be liquidated in a manner consistent with the best interest of the corporation. The charter provided that the payments on current shares, installments, and interests should be due and payable at such times and dates as might be fixed by the board of directors. Any shareholder who should fail or omit to pay the installment on his shares for the period of one month, after the same shall become due, should forfeit and pay as a penalty the sum of 10 cents a share on each share upon which such stockholder failed or omitted to pay the installments due, and such shareholder should pay the same penalty on each share for each subsequent similar default, said fines to be paid before any other installments or interests could be received, but any shareholder owing fines could have the same remitted by paying all arrearages, and also by paying in advance a sum equal to the amount of said arrearages.

"The charter provided that shareholders should be entitled to withdraw their stock under such terms and conditions as might be provided in the by-laws of said corporation. Under the charter the receipts of said corporation were to be divided into two classes, which should be called respectively the capital fund and the expense fund, which were to be kept entirely separate and distinct one from another. The capital fund consisted of all receipts which did not go into the expense fund, and no part thereof could be used for the operating expenses of the association or any expenses except taxes. The expense fund consisted of admission, transfer, and withdrawal fees, together with $10 per share per annum on each and every share, and the charter provided that said expense fund should constitute no part of the capital stock of the association, but the amount belonging to the expense fund of each year was appropriated by the charter to be used by the board of directors to pay and liquidate all operating expenses of the association for said year, paying salaries of officers and agents, for paying commissions, for services of whatsoever kind, for meeting and defraying the expenses incident to printing, advertising, stationery, rent and all other expenses of the association, except taxes, and neither the capital fund nor any of the

branches or series of the association had any right, claim, or participation in said expense fund at any time. The charter provides that the corporate powers of the defendant corporation shall be exercised by a board consisting of ten directors to be elected by the shareholders. Said directors have and had the power to enact by-laws for the corporation. Said charter gave and gives said corporation the right to carry on business and establish branches in any county or district of any other State of the United States. Each of such branches was to be controlled by the local board of directors under the management, supervision, and direction of said corporation, and subject to the by-laws, rules, and regulations adopted by the board of directors of the association.

4. "The defendant corporation had elected a board of directors under its charter, who had enacted by-laws for the government of the association, and had established branches of the corporation in various counties in other States, including one at the city of Sherman, in Grayson County, Texas. The by-laws provided that the members holding stock in said corporation in each town might organize a local board, consisting of a president, vice-president, secretary, treasurer, and attorney, and a board of not less than three nor more than nine directors, all of whom had to be stockholders. The defendant, Julian G. Hedrick, was the elected secretary and treasurer, and plaintiff Crenshaw was elected local attorney of the board at Sherman. Other persons holding shares were elected as members of the local board at Sherman, among them defendant Carpenter, who was president of the local board.

5. "The plaintiff Crenshaw subscribed for the first ten shares of stock of the defendant, held by him for the purpose of enabling him to hold the position of local attorney for the local board at Sherman, but he purchased the said forty shares from Luckett, for the purpose and with the view of obtaining a loan from the defendant.

6. "Among the by-laws enacted by the general board of directors of the defendant were the following: At any time after one year and before two years the certificate (or stock) may be returned, and members will be entitled to receive for each share the money paid into the capital fund of such shares with 6 per cent interest.. At any time after two years and before three years the certificate may be returned and the member will be entitled to receive for each share the money paid into the capital fund on such share and 7 per cent interest; and after three years 8 per cent interest. A withdrawal fee of 50 cents per share will be charged. A member desiring to withdraw his shares shall be required to give the association sixty days notice of such intended withdrawal. The association shall not be required without the consent of the directors to use more than one-half the money received from monthly payments in any one month for the payment of withdrawing stock. Members who have obtained loans can not withdraw their shares unless the loan is paid. Payments of each share shall be 70 cents per month, and shall commence one month from date of certificate, and shall be due each subsequent month on the day of the month on which certificate is dated, provided,

however, that the board of directors may require monthly payments on all or a portion of the stock outstanding, to be paid on the same day of the month. One dollar per annum on each share shall be passed to the expense fund, as provided in the charter. 'All money due from members of the association, or from it to the members, shall be payable at the home office in New Orleans, La.' 'If the loan is granted, interest for the first six months may be deducted from the amount. of the loan.' 'Loan on real estate may be repaid at any time after one year on thirty days notice.' If a borrower thereon neglects to pay interest due on monthly payments for a period of six months from the time the same shall be due, then the whole principal mentioned in the mortgage and note or bonds shall at once become due and payable without notice, and proceedings may be commenced forthwith to foreclose such mortgage or to collect said bond or note in such manner as the board of directors may deem best. All contracts made by or with the association shall be deemed to have been made at the home office in New Orleans, La.

7. "On the 12th day of May, 1891, the defendant corporation loaned to the plaintiff the sum of $2500, deducting therefrom the sum of $75, which the defendant retained as interest on said sum for the first six months. The plaintiff executed and delivered to the defendant corporation his promissory note for the sum of $5000, which note was in all respects as set forth in his original petition. At the same time plaintiff executed and delivered to the defendant a mortgage or deed of trust, in substance as follows: On May 12, 1891, plaintiff executed and delivered his deed of trust to said corporation on certain lots described in his petition to secure the payment of a note for the sum of $5000, bearing the same date, due six months after date, payable to the order of said corporation at its office in New Orleans, La., together with interest thereon at the rate of $12.50 per month from date, payable monthly, and in case of legal proceedings 10 per cent attorney's fees, insurance, costs, and expenses, secured by pledge of the installments already paid in, and those to be paid in on fifty shares of stock of said association, in the name of the plaintiff, and also secured by the aforesaid deed of trust. It is provided in said note that so long as the interest and installments on said stock are punctually paid, the payment of the obligation shall not be demanded, but extended until, exclusive of interest dividend, the amount of said installment and dividend credit thereon shall be equal, exclusive of interest, to the amount of this obligation, at which time the certificate representing such stock shall be canceled, and the association released from all liabilities thereon, and the note canceled and returned to the plaintiff, each offsetting the other. It is further provided in said note that the failure to pay the interest and installments on said shares for six months renders it due, and authorizes the association to sell said stock as provided in its charter, and it is further provided in the deed of trust that a failure to pay the interest and said installments for a period of six months, that the trustee or substitute shall sell the property at

the request of the Southwestern Building and Loan Association, or to the holder or holders of said note.

8. "At the time the plaintiff subscribed for the first ten shares of stock of the defendant corporation, a certificate for said shares was issued to him, which was in substance as follows: No. 1857. Series No. 4. Ten shares for $1000. It shows on its face that the plaintiff has subscribed for and owns ten shares of stock, and holds the same under the following conditions: He was to pay 70 cents monthly for each share, payable on the day of the month on which this certificate is dated, until such shares mature or are withdrawn, payment due and payable at the home office at New Orleans, La., provided that any branch may elect a local treasurer, and payments made to him at the home office for transmission, he being deemed the agent of members, and not of the association. It is further provided that the monthly installments, together with fines and interest, shall go to the capital fund, and authorizes the association to deduct $1 per share per annum for the expense fund. In default of the monthly payment a fine of 10 cents is assessed. Stock is nonforfeitable, but in case of default in monthly payments the shares of stock may be sold, and proceeds applied first to the payment and expenses of the sale; second, to the payment of monthly dues, arrears, and fines, and balance to the owner of stock. The association has the right to bid therefor an amount equal to that which is due for its monthly dues unpaid and fines, and if it becomes a purchaser of the shares, stock shall be canceled, and all funds standing to the credit of such stock forfeited to the other shareholders. It is further provided that stock, on which no loans are made, may be transferred on the books of the association when not in arrears for dues or fines, and on shares on which loans have been made, may be transferred to the purchaser of the property on which the association has its lien, by the consent of the board of directors. It is further provided in the certificate, at the end of each fiscal year the profit arising from interest, premiums, fines, and other sources, shall be apportioned among the shares in good standing; that whenever monthly payments on the shares and the profits apportioned to such shares amount to the sum of $100, that it matures the said shares, and monthly payments shall cease. That there are other provisions in this certificate which do not affect this case.

9. "The certificate for the Luckett shares are in all respects the same as the certificate for the ten shares except the number, the name of the shareholder, and the amount.

10. "Plaintiff paid to the defendant corporation all his monthly stock dues on said fifty shares of stock, amounting to the sum of $35 per month, and the monthly interest amounting to the sum of $12.50 per month, up to and including January 19, 1895, beginning with June 10, 1890. After January 19, 1895, plaintiff failed and refused to make any further payments to the defendant corporation whatever.

11. "A short time prior to July 10, 1896, the defendant corporation, through its board of directors, exercised its option and declared the en-

tire principal and interest on said loan to be due, and directed the trustee Julian G. Hedrick, named in said deed of trust, to advertise the land described in said deed· of trust for sale at public outcry in accordance with the laws of Texas, which the said Hedrick was proceeding to do when he was restrained by writ of injunction issued from this court, July 10, 1896.

12. "Plaintiff in open court waives the issue of business homestead set forth in his pleading, and agrees, so far as this suit is concerned, the property described in said deed of trust shall not be considered as his homestead.

13. "At the time plaintiff and his wife executed and delivered said deed of trust to the defendant corporation, plaintiff hypothecated and transferred to the defendant corporation all of said shares of stock for the purpose of securing the said loan, installments, and dues thereon.

14. "At the time plaintiff subscribed for said ten shares of stock, and purchased said forty shares of stock from said Luckett, the laws of the State of Louisiana, as set forth in exhibit C of the defendant's first amended original answer were in force; have continued in force, and are still in force.

15. "The laws of the State of Louisiana, as the same have been finally and authoritatively construed by the court of last resort in that State, to wit, the Supreme Court of said State, provides that the said contract between the plaintiff and the defendant corporation is not such a contract as can involve or permit the defense of usury as between a stockholder and the association.

16. "The provisions of the charter of the defendant corporation and the by-laws hereinbefore set forth were not devised by the defendant corporation for the purpose of evading usury laws of the State of Texas.

17. "The first payment of interest on said loan made by plaintiff to the defendant corporation was on January 9, 1892, and was for the sum of $12.50; since that date the plaintiff paid to the defendant corporation as interest on said loan the sum of $12.50 each month, up to and including January 19, 1895.

18. "Prior to the time of the issuance of said stock by the defendant corporation to plaintiff said corporation had duly complied with the laws of Texas relative to foreign corporations doing business in this State, and had obtained a permit to do business in the State.

19. "In October, 1895, the plaintiff gave the defendant corporation the notice in writing required by the by-laws of the defendant corporation for the withdrawal of his stock, but did not pay to said corporation the balance on said loan still due, nor offer to pay the same, claiming that he had paid said loan in full and wanted settlement."

Conclusions of Law.—1. "Under the decision of the Supreme Court of this State, the loan contract between plaintiff and defendant corporation, as embodied in the note and deed of trust mentioned in the conclusions of fact, was and is usurious, and therefore all the payments made by the plaintiff to the defendant corporation as interest, including the sum

of $75 retained by the defendant corporation at the time it made the loan, should be applied to the satisfaction and payment of the original amount of the loan, to wit, $2500. The plaintiff having made forty-five payments of interest of $12.50 each payment, and having also paid the sum of $75 as interest in advance, he is entitled to have the sum of $637.50 deducted from the $2500 originally loaned him by the defendant corporation, which leaves a balance due from the plaintiff to the defendant corporation of $1862.50 on said loan.

2. "The plaintiff never having complied with the provisions of the by-laws, with reference to the withdrawal of stock where a loan is made thereon, is not entitled to have the withdrawal value of said stock credited on said loan.

3. "The defendant association is entitled to recover all monthly stock dues held by him that have accrued since January 19, 1895, being $35 per month, amounting to $1400.

4. "The defendant corporation is also entitled to recover of the plaintiff fines on the unpaid monthly stock due at the rate of 10 per cent per share for each installment of stock dues that is in arrears, amounting to the sum of $200.

5. "The defendant corporation is entitled to recover of plaintiff the sum of $186.25, being 10 per cent of the balance of said loan, as attorney's fees.

6. "The defendant corporation is entitled to recover judgment against the plaintiff for the aggregate of said amounts, to wit, the sum of $3648.75, with interest from this date at the rate of 6 per cent per annum; and is entitled to have its said mortgage on the property described therein, and its said lien on said stock foreclosed.

7. "The decisions of the Supreme Court of this State holding contracts like the one in this case usurious do not impair the obligation and validity of contracts within the meaning of the Constitution of the United States."

*Opinion.*—1. The first assignment of error complains that the court erred in not holding the contract of loan usurious, and in not rendering judgment for the plaintiff canceling the note and mortgage.

The court did hold the contract to be usurious, and applied the interest payments to the satisfaction of the principal of the debt. It found as a matter of fact that the charter and by-laws of the defendant corporation were not devised for the purpose of evading the usury laws of the State of Texas, but it did not find that this particular character of contract was required by the charter and by-laws of the corporation, nor that the form of the contract used was not adopted for the purpose of covering up usury, nor that the contract was in good faith intended to be performed in Louisiana. The corporation was doing business in this State under a permit from the State, and the contract by its terms manifests that it was the intention of the parties that it should be performed in this State. The contract is of the same character as that held usurious

in Association v. Griffin, 90 Texas, 480. And in that case it was held that the fact that the corporation was chartered under the laws of Dakota, and the note made payable in that State, where the contract, under its laws, was not usurious, would not prevent the application of our usury laws. As to the other proposition raised by the assignment, that the note and mortgage should have been canceled by the judgment, we will dispose of that question hereafter.

2. The second assignment urges that the court erred in not allowing appellant credit upon the loan debt of $2500 of his stock payments of $35 per month, in addition to the $637.50 paid as interest. The amount paid and denominated interest was $637.50; the amount of monthly stock payments made prior to the loan was $350; the amount of such stock payments made after the loan was $1500, the whole aggregating $2487.50. This amount, it will be seen, only lacked $12.50 of being the amount of the original loan—$2500. The appellant paid regularly the interest and stock payments up to and including January 19, 1895, at which time he had paid, as before stated, $2487.50 in all, not including membership fees and dues. In October, 1895, appellant gave notice to the company in writing, as required by the by-laws for the withdrawal of his stock, claiming that the full amount of the loan had been paid by him. In July, 1896, the company treated him as in default and declared the debt, principal and interest, to be due, and directed the trustee to sell under the deed of trust. The trustee was proceeding to execute this order when the injunction in this case was issued, and he was thereby restrained from doing so. The by-laws expressly permit the withdrawal of stock, and provide that the monthly stock payments previously made shall be returned to the stockholder, with certain specified rates of interest thereon. It is required, however, in cases where members have obtained loans, that they can not withdraw their stock and receive back the installments paid, unless the loan is paid. It is further provided that the stock is nonforfeitable, but in case of a default a sale of the stock is provided for. Had appellant's loan of $2500 been fully paid up at the time he made the demand for withdrawal and settlement, he would have been entitled under the plain express terms of the contract to the withdrawal privileges. The law will make the application of the usury paid by him as payment upon the principal debt; this sum and the stock payments which he had made lacked only $12.50 of meeting the entire loan. The loan company was demanding a continuation of the regular installments, including the usurious interest; while appellant was contending that the debt was paid. The sale attempted under the deed of trust being restrained, the rights of the parties are to be judicially determined, as invoked by the pleadings of the parties.

There is nothing in the contract of the parties which has worked a forfeiture of appellant's right to have his stock payments applied in liquidation of the loan debt. There was no sale of the stock and purchase by the company, as provided for in the by-laws. The matter stands just as if the company were called upon to make an adjustment of the

whole matter. Appellant in his pleadings tenders payment of the amount which it may be determined he is justly due and owing, and asks a cancellation of his note and deed of trust. We are of opinion that he is not entitled to have the membership fees of $50 applied upon the debt, as is contended for by him. Association v. Griffin, 90 Texas, 480. But we think it quite clear that he is entitled to have that disposition made of his stock payments. The company could not require that he should pay more usury before availing himself of the withdrawal privilege provided for in the by-laws of the company. As to the $200 fines allowed by the court below, there was no such default as justified such fines, and they should not be recovered by the company. As to the attorney's fee of 10 per cent provided for in the contract, the appellant having brought the company into court and contested all indebtedness, made himself liable for 10 per cent attorney's fees upon the amount finally recovered by the company. Judgment will here be rendered in accordance with the views expressed: reversing the judgment of the court below, and decreeing in favor of appellant the cancellation of the note, mortgage, and shares of stock, upon appellant's paying to the clerk of this court, for the use and benefit of said company, within twenty days, such sum as will cover $12.50, with 6 per cent interest from January 19, 1895, 10 per cent attorney's fees thereon, and all costs of the court below. And in case he shall fail to comply with this requirement, said loan company shall have judgment for such sum, and a foreclosure of the deed of trust.

*Reversed and rendered.*

Writ of error refused.