## CONTINENTAL SAVINGS & BUILDING ASS'N v. WOOD et al.

### No. 594.

Court of Civil Appeals of Texas. Eastland.

Nov. 21, 1930.

Rehearing Denied Jan. 2, 1931.

John T. Gano and Wm. H. Flippen, both of Dallas, and C. S. Perkins, of Sweetwater, for appellant.

Hamner & Ponder, of Sweetwater, for appellees.

HICKMAN, C. J.

Manse Wood and R. L. Pitzer instituted this suit against Continental Savings & Building Association, a corporation, having its principal office in Dallas County, to recover the penalty provided under article 5073, R. S. 1925, on account of the alleged payment by appellees to appellant of usurious interest upon a loan. Upon findings by the court, before whom the case was tried without the intervention of a jury, judgment was rendered in favor of appellees against appellant for $3,-120.16, this being double the amount of all of the interest paid by appellees to appellant, according to the findings.

There are many questions involving the law of usury presented in appellant's brief, and, in order to disclose how the various questions arose, a lengthy statement of the nature of the suit would be required. We have determined that there are two controlling questions, and shall make such statement only as shall be required for an understanding of our holdings on these questions. We do not overrule the assignments not discussed, but pretermit a discussion thereof, because same is unnecessary under our views of the controlling questions.

Manse Wood applied to R. W. Thompson to procure a loan for the purpose of erecting certain improvements on a lot owned by him and Pitzer in the city of Sweetwater. Thompson was a member of the firm known as Kendrick-Thompson Agency, conducting an insurance and loan business in the city of Sweetwater. It is unnecessary for us to decide whether, in the negotiation of a loan, this agency was an independent brokerage firm, or was, as contended by appellees, the agent of appellant. The result of the negotiations between Wood and Thompson was a loan by the appellant of $6,000. The method of procuring the loan was that commonly employed by building and loan associations incorporated under the laws of the state of Texas, as provided under title 24, arts. 852 et seq., Revised Civil Statutes 1925. Wood signed a written application addressed to appellant for a loan of $6,000 and 'for a subscription for ninety shares of class A installment stock in the association, agreeing to accept same subject to its by-laws. In the application he agreed to repay the loan in monthly payments of $94.80, which amount was to be a monthly payment of dues on stock subscribed for and interest on the loan. The monthly interest payment was $49.80, and the balance of $45 on each monthly payment was, according to the application, to be applied as dues on the stock subscribed for. The title to the lot was approved and the application accepted by the appellant and the sum of $6,000 loaned to appellee Wood. To facilitate the making of the loan, appellee Pitzer deeded his one-half interest in

772

the lot to Wood, and Wood reconveyed same to Pitzer after the consummation thereof. Questions of the right of Pitzer to set up usury in the transactions are raise by the briefs. For the purposes of this opinion, we shall regard the transaction as if both appellees were parties thereto from its inception.

As evidence of the indebtedness, a note for the principal sum of $6,000 was executed, payable to the order of appellant "at and when the 90 shares of the capital stock of said association, Class A installment, evidenced by its certificate No. —— shall reach a value equivalent to the face of the loan for which said note is given, which note bears interest from date at the rate of 10% per annum, payable in equal monthly installments. * * * " To secure the payment of said note, a deed of trust was executed upon the lot upon which the improvements were to be erected.

As part of the same transaction, appellee Wood executed to appellant a written instrument, pledging his 90 shares of capital stock in said association, as collateral for the indebtedness. After paying 22 monthly installments of $94.80 each, appellees exercised an option granted them by the statutes to repay the loan in full. In order to do so, they paid to appellant the amount which it claimed to be the balance due, and, after doing so, instituted this suit, claiming that the total amount paid exceeded the principal of the loan, with 10 per cent. interest thereon, computed for the period of time up to the final payment.

The fact is undisputed that appellees actually paid to appellant a sum of money in excess of the principal and interest on the loan. The questions for our determination are whether the several items entering into the amount of the payment are properly denominated interest as that term is defined in article 5069, R. S. 1925. In that article interest is defined as "the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money." It is undisputed that no part of the first six monthly payments was applied as dues upon the stock subscription; $49.80 of each installment was applied as interest, leaving a balance on each of $45. This amount of $45 was by the association deducted from each of the first three payments, and was paid by it through its general manager to Kendrick-Thompson Agency as a commission or brokerage fee for negotiating the loan, making the amount paid said agency for its services $135. A like amount was paid from the next three monthly installments as membership fees. Only two questions of law are thus presented: First, shall the sum of $135 paid to Kendrick-Thompson Agency be excluded in determining the amount of interest paid? And, second, shall the amount of $135 paid as membership fees be likewise excluded? We shall consider the second question first.

■■ As noted, the appellee subscribed for 90 shares of the capital stock of the appellant association, thus becoming a member thereof and subject to its constitution and by-laws. A membership fee of $1.50 per share was the fixed charge on all stock sales. By their contract appellees agreed to pay this sum. This amount was not paid as interest at all, but was paid by virtue of a contract to purchase stock. The payment of such amount could not be regarded as a payment of interest, unless, as found by the trial court, same was done as a device to conceal the taint of usury. It is conceded that our statutes relating to building and loan associations above cited authorize this device, and it is not contended that appellant exacted any charge not authorized by such statutes. The question therefore becomes one of the constitutionality of these statutes. Manifestly, appellant could not be adjudged to have devised a scheme to conceal usury if all its actions were authorized by a valid statute. Prior to the enactment of these statutes, it had become the settled law in this state that payments made by virtue of a contract to purchase stock are not made for the use of borrowed money, but are the means by which a shareholder acquires an interest in the property of the association, and that there is no inconsistency between the relationship of borrower and stockholder. The contracts to borrow money and to subscribe for stock are separate and distinct. International Bldg. & Loan Ass'n v. Abbott, 85 Tex. 220, 20 S. W. 118; International Bldg. & Loan Ass'n v. Goforth, 94 Tex. 259, 59 S. W. 871; International Bldg. & Loan Ass'n v. Bryan, 21 Tex. Civ. App. 563, 54 S. W. 377; Crenshaw v. Hedrick, 19 Tex. Civ. App. 52, 47 S. W. 71; El Paso Bldg. & Loan Ass'n v. Lane, 81 Tex. 369, 17 S. W. 77; 7 Tex. Jur. 712, §§ 7 and 8, and authorities there cited. See, also, Tilley et ux. v. American Bldg. & Loan Ass'n (C. C.) 52 F. 618; Gumby v. Armstrong (C. C. A.) 133 F. 417.

We cannot ascribe to the Legislature the intention to devise a scheme to defeat the Constitution and statutes; particularly so when it does no more than to authorize contracts which had been declared valid by the Supreme Court prior to the enactment of the statutes. It follows that the item of $135 paid by agreement as membership fees must be excluded in determining whether usury was paid to appellant.

Considering next the question of whether the payment of $135 to the Kendrick-Thompson Agency as commissions shall be treated as a payment of interest, a different question of law is presented. Thompson testified, in effect, that Wood understood that this amount was to be deducted from his first three payments, and agreed to that arrangement. Wood denied the existence of such a contract or agreement and denied any knowledge of

the arrangement between Thompson and appellant. In this state of the evidence the trial court found: "The plaintiffs, (appellees) understood that the defendant, (appellant) was to pay all expenses of brokerage fees, examination of title, and all other expenses except the costs of the abstract of title, which costs plaintiffs paid, and these facts were so represented to the plaintiffs by W. R. Thompson at the time and before the loan was made." The court further found: "An amount totaling $135.00 came into possession of the Kendrick-Thompson Agency as payment of their fees through a personal check from Ralph A. Beaton, the vice-president of the defendant company, being $45.00 out of each of the first three payments." These findings are unchallenged by appellees, and are in accord with the testimony of appellee Wood.

■ There is, therefore, clearly presented for decision the question of whether the existence of a contract to pay usurious interest is an essential element of an action to recover penalties under article 5073, R. S. 1925. The question has many times been decided in other jurisdictions, and a careful study of the authorities reveals irreconcilable conflicts. These conflicts are possibly due to different definitions of interest in the statutes of the various states. The general rule is thus stated in 39 Cyc. p. 947: "There can be no usury without a contract therefor. The mere fact that the creditor subsequently to the contract of loan or forbearance actually took or received more than legal interest does not render usurious the previously valid contract."

In the case of Dunlap v. Chenoweth et al., 88 N. J. Eq. 496, 104 A. 822, the facts are similar to those in the instant case. A bonus was withheld from the borrower without any previous agreement, and in disposing of the question of whether such withholding of a bonus, in the absence of a contract so to do, was usury, the court uses this language: "A corrupt bargain, to contravene the statute, is essential to sustain the plea of usury. Withholding of a part of the loan as a bonus, without a previous agreement to that effect, does not constitute usury. Howell v. Auten, 2 N. J. Eq. 44; Ware v. Thompson, 13 N. J. Eq. 66; Muir v. Newark, 16 N. J. Eq. 537; Auble v. Trimmer, 17 N. J. Eq. 242; Kase v. Bennett, 54 N. J. Eq. 97, 33 A. 248. The remedy for the wrongful detention is to correct the settlement, and not to forfeit the interest, if there was no contract to evade the statute. United States Mortgage Co. v. Sperry, 138 U. S. 313, 11 S. Ct. 321, 34 L. Ed. 969."

In the case of Guggenheimer v. Geiszler, 81 N. Y. 293, an amount was withheld for a commission for obtaining a loan without a contract authorizing such withholding, but such withholding was actually for the benefit of the lender. The contention was made by the borrower that this act constituted usury, but it was held that, since the money was not retained under an agreement made by the borrower nor with his assent, and since such charge was by virtue of no agreement, there could be no usury. A like holding was made in the similar case of Morton v. Thurber, 85 N. Y. 550.

In the case of Burns v. Equitable Bldg. & Loan Ass'n, 108 Ga. 181, 33 S. E. 856, 857, the Supreme Court of Georgia considered a case very similar in facts to the instant case, and held that the absence of an agreement on the part of the borrower to pay usurious interest was fatal to his claim of usury. The opinion quotes with approval the following rule: "Equally unavailing as a defense is the previous or subsequent illegal conduct of the building association, or its officers, where a valid contract has been entered into, or valid obligations have been incurred."

Other cases from other jurisdictions wherein like holdings were made are: Bosworth v. Kinghorn et al., 94 App. Div. 187, 87 N. Y. S. 983; Westerfield v. Bried, 26 N. J. Eq. 357; Weicker v. Stavely, 14 N. D. 278, 103 N. W. 753; In re Samuel Wilde's Sons (D. C.) 133 F. 562; Dodds et al. v. McCormick Harvesting Machine Co., 62 Neb. 759, 87 N. W. 911.

A consideration of the Texas statute and authorities has led us to the conclusion that the rule applied in the foregoing cases is the rule applicable in this state. The only authority for appellees' action is article 5073, R. S. 1925. That article gives to one paying usurious interest an action against his creditor for a penalty when such usurious interest "shall have been received or collected upon any contract." The very language of the article itself precludes the idea that such cause of action exists in the absence of a contract. The question arose in the case of Interstate Bldg. & Loan Ass'n v. Bryan, 21 Tex. Civ. App. 563, 54 S. W. 377, 378, wherein the holding of the court is reflected by the following language taken from the opinion: "If the contract as made is not usurious, the fact that the settlement before maturity, by applying the then value of the stock to the extinguishment of the debt, may show that more has been paid than the loan would amount to with lawful interest, would not render it so."

The same question was presented to the Austin Court of Civil Appeals in the case of Driscoll v. Dennis, 220 S. W. 576, 577, wherein Chief Justice Key used the following language: "But, in order to predicate a recovery of penalty for violating the usury statute upon that item, it must be alleged and proved that such excess paid by the plaintiff to the defendant was received and accepted by the defendant as a payment upon a contract for usurious interest; and such proof was not

made. In fact, the plaintiff alleged that there was no contract to pay usurious interest."

The same rule, we think, was recognized and applied by·our Supreme Court in the recent decision of Shropshire v. Commerce Farm Credit Co., 30 S.W.(2d) 282, 285. In that opinion Mr. Justice Greenwood, speaking for the court, quotes with express approval from 27 R. C. L. § 24, pp. 223, 224, stating that the rule therein announced is a clear statement of the law which governs our decisions. We shall not reproduce the entire quotation, but a portion thereof, with italics made by the Supreme Court, follows: "Usury, it is considered, does not depend on the question whether the lender actually gets more than the legal rate of interest or not; but on whether there was a purpose in his mind to make more than legal interest for the use of money, and whether, *by the terms of the transaction*, and the means used to effect the loan, he may *by its enforcement* be enabled to get more than the legal rate."

■ In the instant case the application for the loan and for a subscription for 90 shares of capital stock provided that the monthly payments of $94.80 should be for dues on the stock subscribed for and for interest on the loan. The note executed provided for interest at the rate of 10 per cent. Unless there was an oral agreement between the Kendrick-Thompson Agency and the appellees, whereby the sum of $135 should be paid to such agency as commissions, there was no contract whatever authorizing such application of payment. The trial court has found upon the testimony of appellee Wood, which is unchallenged by appellees, that no such contract was made between appellees and this agency. The record, therefore, presents a state of facts wherein the appellant has misapplied $135 paid by appellees as dues upon their subscription for stock. In short, as to this item of $135, appellees proved a tort committed by appellant. However wrongful might have been the acts of appellant and its officers in misappropriating the payments made by appellees, such acts do not support an action for penalty on account of the payment of usurious interest upon a contract. The case presented by this record is no different from this supposed case: A owes B a note. A is likewise surety on a note owing by C to B. A, from time to time, makes payments to B, directing that such payments be applied upon his individual note. These payments are misapplied by B upon C's note, on which A is surety. Without discovering the fact of misapplication, A finally pays to B all the balance claimed by B as owing upon his note. It develops that.A has paid B more than the principal of his note and 10 per cent. interest. It would perhaps not be contended that A could predicate a suit for penalty for usury against B under

this state of facts. This for the reason that the excessive payments were not made by A and received by B as interest upon a contract.

Viewing the question presented from another angle, let us suppose that appellees had never made any payments whatever upon this indebtedness to appellant, but had wholly defaulted, and that this were a suit instituted by appellant against appellees upon their note. The defense against all interest on account of usury, as provided in article 5071, R. S. 1925, would not be available to appellees, because there is no element of usury in the contract at all. Certainly, it seems to us, a contract. insufficient to support a defense under article 5071 is likewise insufficient to support a cause of action under article 5073.

It is our opinion that, in determining the question of whether the transaction in the instant case was usurious, the item of $135 paid as a commission to the Kendrick-Thompson· Agency must be excluded.

■ The ·question remains whether, deducting the two items of $135 each from the amount paid by appellees to appellant, there yet remains a payment in excess of the principal with 10 per cent. interest. According to the statement of facts originally filed in this court, approved by counsel for appellant and by the trial judge, the elimination of these two items brings the amount paid by appellees to appellant well within the principal of the loan, with 10 per cent. interest thereon. There has, however, been filed a supplemental statement of facts. It is recited therein that, at the time the original statement of facts was presented to the trial judge ·for his approval by the attorneys for appellant, appellees' attorneys objected thereto. That said attorneys requested the court that, if he signed said statement of facts, to do so with a reservation that a supplemental statement of facts should be entered into, and that thereupon an agreement in writing was made by the attorneys for the respective parties, and approved by the court, that within ten days ·appellees could file a supplemental statement of facts containing any evidence that might be agreed upon by the court and the attorneys for appellees. Following this recital are several pages of corrections in many details of the original statement of facts, and there is testimony by appellee Manse Wood and by R. W. Thompson to the effect that, in addition to paying the draft drawn by appellant against appellees in the taking up of the loan, appellees paid to R. W. Thompson a check for $135 which was forwarded to appellant. With this item taken into account, there was an excess payment above.the principal and 10 per cent. interest made by appellees to appellant. We seriously question, without expressly deciding, whether we are authorized to consider this supplemental statement of facts. The effect of it is to impeach the certificate of the

trial judge to the original statement of facts. But, regardless of this consideration, and assuming that this testimony should be considered, the rule of law above announced would be applicable to this item. There certainly was no contract under which appellant was entitled to receive this additional sum of $135. If it were paid, the payment thereof was induced either by mutual mistake or fraud, in either of which events no cause of action for usury could be predicated thereupon.

If appellees have any cause of action against appellant, it is based upon a tort, and the amount thereof is below the jurisdictional amount of the district court. The finding of the absence of any contract was made by the trial court upon the testimony of appellees. There is, therefore, no reason for remanding this cause, as brought, for a new trial. It is therefore our order that the judgment of the trial court be reversed and judgment be here rendered that appellees take nothing by their action, without prejudice, however, to their right to institute and maintain a suit in the proper court for a misapplication of payments or an overcharge, or both, as the facts may warrant.

Reversed and rendered.