CHASE & BAKER CO. v. NATIONAL TRUST & CREDIT CO.

(District Court, N. D. Illinois. June 26, 1914.)

No. 50.

1. Banks and Banking (§ 86*)—Organization—Purpose—Discounting Accounts and Commercial Paper—"Banking Business."

Discounting accounts and commercial paper is not exclusively a banking function or business, where the corporation uses its own funds for such purpose, since the banking business in which an ordinary Illinois corporation may not engage involves the receipt of deposits from customers and the use of money so obtained for banking purposes.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 218; Dec. Dig. § 86.*]

2. Corporations (§ 387*)—Ultra Vires Acts—Effect.

Where complainant sold certain accounts at a discount to a credit company guaranteeing payment thereof, complainant having power to sell, defendant's act in buying the accounts, even if ultra vires, could not reinvest complainant with title to the accounts so as to entitle it to recover them, since, if defendant was powerless to hold them, the state only could call it to account.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1548–1553; Dec. Dig. § 387.*]

3. Assignments (§ 16*)—Accounts—Collateral—Executed Transaction.

Where complainant assigned certain accounts to a credit company under an agreement by which complainant guaranteed payment, 20 per cent. of the purchase price being retained as security, not for the performance of complainant's guaranty, but for the obligations of the debtors owing the accounts assigned, the assignment, except as to complainant's obligation to guaranty, was an executed one.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 24; Dec. Dig. § 16.*]

4. Usury (§§ 92, 115*)—Form of Transaction—Recovery of Collateral—Payment of Debt.

A court of equity will not be frustrated in ascertaining the real intention of the parties to make a usurious loan by the fact that parol proof thereof would contradict the written evidence of the apparent transaction; but, if it appears that the real intent of both parties was to make a usurious loan, then, so far as the transaction is still executory, the debtor may recover his collateral on payment of the debt with legal interest.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 191–193, 196, 326; Dec. Dig. §§ 92, 115.*]

5. Sales (§ 3*)—Assignment Distinguished.

A contract provided that defendant, in consideration of $1, agreed to buy from complainant all acceptable accounts tendered to it and pay therefor the face value thereof less specified discounts, depending on the number of days the accounts were to run, etc., complainant to act as defendant's agent without compensation or costs, to collect and receive payments, and to hold the same in trust and pay over the same to defendants, complainant guaranteeing the payment to defendant or its assigns of all accounts purchased and within five days after receipt of written request to do so, to repurchase at their face value all accounts in default or against insolvent debtors, etc. Held, that the transaction on its face was a sale and assignment of the accounts and not an agreement for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the loan of money, the sale and guaranty being separate and distinct contracts, the former being executed and the latter executory.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 6–19; Dec. Dig. § 3.*]

6. USURY (§ 72*)—SALE OF ACCOUNTS—SERIES OF TRANSACTIONS.

Though an original agreement by which defendant bound itself to purchase such accounts as complainant offered to it, complainant guaranteeing the accounts and defendant retaining 20 per cent. of the purchase price as collateral to the debtor's obligation to pay, was regarded as an agreement to make such loans· as complainant might require and for which it could give the collateral specified, it would not make an entire series of such transactions a single one, but for the purpose of determining whether they were usurious each loan must be considered separately.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 147; Dec. Dig. § 72.*]

7. USURY (§ 102*)—USURIOUS TRANSACTION—EXECUTED CONTRACT.

An executed transaction cannot be opened for usury under the rule that usurious interest actually paid on a completed transaction must be deemed to have been voluntarily paid, and is not recoverable.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 197, 241, 242, 244–258; Dec. Dig. § 102.*]

8. CORPORATIONS (§ 385*)—POWERS—ULTRA VIRES ACTS—EXECUTED TRANSACTION.

Ultra vires is not ground for reopening a completely executed transaction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1545–1547; Dec. Dig. § 385.*]

9. CORPORATIONS (§ 487*)—ULTRA VIRES LOANS—REPAYMENT OF PRINCIPAL AND LEGAL INTEREST.

Though a loan made by a corporation is ultra vires, repayment of principal and legal interest by the debtor is a prerequisite to a suit to recover collaterals.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1893–1898; Dec. Dig. § 487.*]

10. USURY (§ 95*)—USURIOUS LOAN—RECOVERY OF COLLATERALS—PAYMENT OF DEBT AND LEGAL INTEREST.

Though a loan is usurious, repayment of principal and legal interest by the debtor is a prerequisite to a recovery of collaterals.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 198–202; Dec. Dig. § 95.*]

In Equity. Suit by the Chase & Baker Company against the National Trust & Credit Company. On motion to dismiss bill. Leave granted to complainant to amend, in default of which the motion granted.

The following is a copy of the contract in question:

This agreement made this ...... day of ...... ˙19.., at Chicago, Ill., by and between ...... of ...... hereinafter called First Party and the National Trust & Credit Company, Chicago, hereinafter called Second Party, witnesseth: That, for one dollar ($1.00) and other good and valuable considerations, each to the other paid, receipt whereof is hereby acknowledged, the parties hereto have agreed and do hereby agree as follows:

First. That said Second Party shall buy from said First Party all acceptable accounts, tendered to it by said First Party (it being understood that there is nothing in this Contract that can be construed to obligate the First Party

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to sell accounts to Second Party unless it desires so to do), and pay therefor the face value thereof, less the following discounts:

One per cent. on Accounts that are paid within................fifteen days;
Two per cent. on Accounts that are paid within................thirty days;
Three per cent. on Accounts that are paid within................sixty days;
Four per cent. on Accounts that are paid within................ninety days;
Five per cent. on Accounts that are paid within..one hundred and twenty days;
Six per cent. on Accounts that are paid within....one hundred and fifty days;
Seven per cent. on Accounts that are paid within..one hundred and eighty days;
subject, however, to the terms of this and any subsequent written agreements executed by the parties hereto; that the Second Party shall pay:

Seventy-eight per cent. on............................thirty day Accounts;
Seventy-seven per cent. on............................sixty day Accounts;
Seventy-six per cent. on............................ninety day Accounts;
Seventy-five per cent. on............one hundred and twenty day Accounts;
Seventy-four per cent. on............one hundred and fifty day Accounts;
Seventy-three per cent. on............one hundred and eighty day Accounts;
upon delivery and acceptance of such accounts. The remainder, less discount and deductions taken by the debtor, and exchange on checks, etc., charged by Chicago banks, shall be paid immediately after the collection of the account by the Second Party; but no payment shall be made while any of said accounts are in default.

Second. The First Party shall assign and deliver to said Second Party all accounts purchased, including the right of stoppage in transitu and title to the merchandise named in the accounts, subject only to the rights of the purchaser therein.

Third. That the First Party shall act as the Second Party's agent, without compensation or cost, to collect, and receive in trust for said Second Party and to transmit and deliver, on the day of the receipt thereof, the original checks, drafts, notes and other remittances received by said First Party in payment of or to apply on accounts sold pursuant to this agreement but in no event shall said trust funds be commingled with the funds of said First Party; that the First Party shall cause such attention to be given to the collection of said accounts as the Second Party may require; that the Second Party has the right to terminate this agency at any time for failure of the First Party to comply with the terms of this agreement.

Fourth. Said First Party hereby guarantees the payment to the Second Party or its assigns of all accounts purchased hereunder according to the terms thereof, and agrees that, within five days after receipt of written request so to do, the First Party shall repurchase, at their face value, all accounts in default or against insolvent debtors and make payment therefor to said Second Party at its office in Chicago, Ill. Immediately after the purchase of every account hereunder, said First Party shall make upon its books an entry showing the sale of said accounts to said Second Party, and said Second Party is hereby given the right and privilege of auditing the books and accounts, and of inspecting the records of said First Party, including all correspondence relating to said accounts, at any time that it may see fit so to do.

Fifth. Said First Party hereby appoints Melville N. Rothschild and John L. Little and each of them, attorney in fact, with power of substitution, to endorse the name of said First Party upon all notes, checks, and other forms of exchange received in payment on said accounts and to endorse all bills of lading and shipping receipts relating to said accounts.

Sixth. That said Second Party in making purchase of accounts hereunder relies upon the guarantees and covenants of said First Party herein contained and upon the written representations made to it by said First Party as to the financial responsibility of said First Party; that said written representation heretofore made and that may hereafter be made are for the purpose of establishing the credit of said First Party with said Second Party so that sale of accounts may be made hereunder.

Seventh. That said First Party shall execute and deliver to said Second Party or its assigns, any document necessary or proper to carry into effect

this contract and should said Second Party employ counsel or cause legal action to be instituted to enforce the payment of any of said accounts, or any part thereof, then and in either case, said First Party shall immediately pay to said Second Party or its assigns, all court costs, expenses, attorney's and stenographer's fees which may be by it expended in such proceedings:

In witness whereof the said First Party has hereunto set its hand and seal, and said Second Party has caused these presents to be executed by its President and Secretary, and its corporate seal to be hereto attached.

...................[Seal.]

Attest...................
    Secretary.                    ...................[Seal.]
            National Trust & Credit Company,
Attest...................        By...................
    Secretary.                        President.

### Guarantee and Waiver.

For One Dollar ($1.00), and other good and valuable consideration, receipt whereof from the National Trust & Credit Company is hereby acknowledged, we, and each of us, hereby guarantee to the said National Trust & Credit Company and its assigns, the full, prompt and faithful performance of the foregoing contract, and every provision and condition thereof by......, and we, and each of us, hereby waive notice of any breach of said contract or any provision thereof by said First Party and we also waive notice of acceptance of this guarantee by the National Trust & Credit Company.

In witness whereof, we, and each of us have hereunto set our hands and seal this ...... day of ...... Month, 19...

...................[Seal.]
...................[Seal.]
Witness...................    ...................[Seal.]
...................[Seal.]
...................[Seal.]

Number......

### Certificate of Indebtedness.

This is to certify that the persons named below are indebted to the undersigned in the sums set opposite their respective names, for goods sold and delivered.

| Date of Bill | Debtor | Address | Amount | Terms |
|---|---|---|---|---|
|  | This contract is not binding on either party until accepted by National Trust & Credit Company, at Chicago, Ill. |  |  |  |

Dated at ...... this ...... day of ...... 191..

For and in consideration of the sum of ...... Dollars, ($......) to the undersigned in hand paid, the receipt whereof is hereby acknowledged, the undersigned hereby sells, assigns and transfers to National Trust & Credit Com-

pany, a corporation, all right, title and interest in and to the contracts and open accounts above named, including the right of stoppage in transitu, and the invoices which amount to ...... Dollars ($......) are herewith delivered to National Trust & Credit Company at Chicago, Illinois. The undersigned guarantees that the balances due on said contracts and open accounts are correctly set out in the above schedule thereof, and that full deliveries have been made on all said contracts and open accounts in accordance with the specifications of the buyer; that there is no contra account against any of them, that the amounts due on said contracts and open accounts, as set out in said schedule, are not disputed by the debtor, are not past due, that there are no off-sets against said accounts or any of them for freight, drayage or other carrying charges, commissions, damages or any other counter claims of any nature whatsoever, but the amount set out in each item of said schedule is net and the payment of said item or items is not contingent on the fulfillment of any contract, past or future, and that entries have been made on our books disclosing the absolute sale thereof to National Trust & Credit Company.

In Consideration of the premises aforesaid and the further sum of One Dollar to the undersigned heretofore paid the undersigned hereby guarantees the payment in full to the National Trust & Credit Company, its successors and assigns, of the above named contracts and open accounts in accordance with the terms indicated and appearing thereon.

.....................[Seal.]

Accepted at Chicago, Ill.,......191..
    National Trust & Credit Company
       By.......................
         Its.................

Culver, Andrews & King, of Chicago, Ill., for complainant.
John W. Creekmur, of Chicago, Ill., for defendant.

MACK, Circuit Judge. In this case, one who appears on the face of the papers to be a vendor and guarantor of open mercantile accounts and commercial paper at a discount greater than the legal interest rate is seeking to rescind the transactions and to recover back the accounts or the proceeds thereof on repayment of the purchase price with legal interest, on the ground that the transactions were ultra vires.

The basis for the charge of ultra vires is that such sales, viewed from the standpoint of the purchaser, are discounts; that discounting is a banking function; that defendant, although empowered to purchase accounts, could not lawfully engage in the business of purchasing accounts because that is a banking business and corporations cannot be organized, under the general incorporation act of Illinois, to do a banking business.

There are several answers to these contentions:

[1] First. Discounting accounts and commercial paper, while the proper function of a bank or banker, is not exclusively a banking operation. The banking business in which an ordinary Illinois corporation cannot engage involves the receipt of deposits from customers and the use of money so obtained for banking purposes. An individual or a corporation, using its own funds or moneys borrowed in the ordinary course of business for the purchase of commercial paper for investment or other purpose, does not thereby engage in the banking business. Lending money is one of the most important banking functions. The Illinois act, however, clearly does not regard the prohibition of doing a banking business as sufficient to prevent the organization of corporations to engage in the business of lending their own

capital; in express terms it forbids the creation of corporations under the general act for either purpose.

[2] Second. But if this were a banking business, and if these deals were ultra vires, whatever defense the plaintiff might have if sued on its guaranty, it could not rescind the executed sales or recover back collateral security delivered by it to secure the obligations of its debtors sold by it and now due to the defendant. Plaintiff had power to sell even if defendant had no power to buy the accounts. Plaintiff does not thereby become revested with title to the accounts; the title to the obligations had passed; if defendant is powerless to hold them, if it usurped powers not conferred upon it, the state alone can call it to account.

[3] There is nothing executory in the transactions except plaintiff's obligation as guarantor, and that is not now sought to be enforced. The collateral held by defendant, 20 per cent. of the part purchase price of the accounts, is held as collateral, not for plaintiff's guaranty, but for the obligations of plaintiff's debtors, in which plaintiff, as vendor, no longer has any interest.

B. But in the alternative plaintiff seeks an accounting on the charge that these apparent sales were, in fact, only devices or subterfuges to conceal loans; that such loans were usurious; that they were also ultra vires, inasmuch as defendant was not and could not be organized under the general incorporation act to engage in the business of loaning money.

[4] 1. A court of equity will not be frustrated in ascertaining the real intention of the parties to make a usurious loan by the fact that parol proof thereof would contradict the written evidence of the apparent transaction; not only, however, must such proof be clear, but it must go to the real intent of both parties. If, in fact, both parties intended a usurious loan, then, in so far as the transactions are still executory, the debtor may recover his collateral on payment of the debt with legal interest.

The ninth paragraph of the amended bill falls short however, of making any clear charges that both parties actually contemplated and made loans disguised as sales with guaranties; it merely gives plaintiff's conclusion of law that the transactions amounted to loans.

[5] If it is intended to charge that on the face of the documents the transactions were loans, then clearly the exhibits contradict the averments. They clearly indicate an apparent intention to make an outright sale of open accounts; to permit a part of the purchase money to be held as security for the performance of the debtor's obligation; and in addition, to guarantee the accounts sold.

The decision in Re American Fiber Reed Co. (D. C.) 206 Fed. 309, affirmed in the Court of Appeals, that the transactions were loans, not sales, was based not merely on the documents but on an agreed statement of facts. Moreover, the documents are not identical with those in the present case. Both courts emphasize the importance of a provision deemed by them to indicate that the entire title to the accounts did not pass. This provision, that in case an account is not paid at maturity it shall be repurchased at the amount theretofore actually

paid thereon, about 75 per cent. of the face value, is replaced by the positive agreement to repurchase accounts sold at their full face value. So far as the apparent intention of the parties is thereby indicated, this provision negatives any possibility of an apparent intent to retain title to any part of the account.

The sale and guaranty are separate and distinct; the former is executed, the latter executory. While there is a conflict in the authorities as to whether one who sells commercial paper or open accounts at a discount greater than the legal interest rate and also indorses or guarantees payment may defend on the ground of usury when sued on his conditional executory obligation, clearly usury, even if a shield against such liability, cannot be used as a sword to destroy the executed sale. Usury involves a loan; an actual sale cannot be usurious.

Leave will, however, be given to amend paragraph 9 of the bill so as properly to charge, if plaintiff be so advised, that the transactions were in fact usurious loans.

[6, 7] 2. The original agreement under which defendant was to purchase such accounts as plaintiff offered it, even if proven to be only a subterfuge for an agreement to make such loans as plaintiff might require and for which it could give the kind of collateral specified, and the provision that 20 per cent. of the amount might be retained as collateral for all the deals would not make the entire series of transactions a single one. Each loan would have to be dealt with separately in determining the question of its usurious character and also whether it had been repaid. In so far as any transaction was executed by repayment, it could not be reopened because of usury. The law is well settled that usurious interest actually paid on a completed transaction is deemed to have been voluntarily paid and is therefore not recoverable.

[8-10] 3. Ultra vires no more than usury will justify the reopening of a completely executed transaction. In so far as any loan has been fully repaid, whether at a legal or usurious rate of interest, there can be no recovery. In so far as any loan is still outstanding, repayment of principal with legal interest is concededly a prerequisite, whether it be ultra vires or within the powers of the lender corporation and whether it be at a legal or usurious rate of interest.

Leave will be granted to plaintiff to amend paragraph 9 in accordance with the views herein expressed within ten days. In default thereof, the bill will be dismissed.