## REST HAVEN CEMETERY v. SWILLEY.

### No. 10719.

Court of Civil Appeals of Texas. Galveston.

April 20, 1939.

Rehearing Denied May 11, 1939.

Devereaux Henderson and James A. Copeland, both of Houston, for appellant.

Gill, Jones & Tyler, Jas. G. Donovan, and L. P. Lollar, all of Houston, for appellee.

MONTEITH, Chief Justice.

This is an appeal from a judgment of the District Court of Harris County brought by appellant, Rest Haven Cemetery, plaintiff below, against W. S. Swilley, appellee, for the recovery of penalties and for the cancellation of certain instruments growing out of an alleged usurious contract.

Appellant alleged that M. J. Talley, O. B. McKnight and J. T. House had conceived the plan of establishing a perpetual care cemetery and of organizing a corporation which would own, manage and control such cemetery, each of said organizers owning an equal interest therein; that it was necessary that they receive financial assistance for the purpose of procuring a tract of land suitable therefor and that in pursuance therewith, acting for and on behalf of said proposed cemetery corporation, they entered into a verbal contract with appellee, by the terms of which he would be made a member of the board of directors of said proposed corporation and that he would lend the corporation the money necessary to purchase said land and develop same as a cemetery; that relying upon the promise of appellee they selected a tract of land suitable for such cemetery project and that appellee advanced the purchase price therefor and took the title to said land in his own name; that thereafter said corporation was organized and charter procured; that after the completion of the organization of said corporation appellee fraudulently refused to transfer said land to said corporation until they executed a written contract which contained demands and exactions by way of usury and which differed from the verbal contract theretofore agreed upon by them. Appellant alleged that in addition to the sum advanced by appellee for the purchase of said property, charges were added for brokerage and for interest prior to the purchase of said land; that thereafter additional sums were advanced by appellee to said corporation including an item of $2500 and an item of $500 which were also secured by liens on the cemetery property; that thereafter by threats and coercion they were compelled to pay appellee salaries aggregating $5321 and to convey to him 66½ lots in said

cemetery in lieu of said salary and in addition thereto; that appellee had collected and received within the last two years immediately preceding the filing of this action the sum of $870 in cash and that appellant thereby was entitled to recover the sum of $1740. Appellant prays for judgment for $1740 as penalties, for the cancellation of a note due appellee for $3000.-00 and for cancellation of the deed to said 66½ lots in Rest Haven Cemetery and the certificates for 250 shares for stock in said corporation assigned to assignee.

Appellee answered by pleas of the two and four year statutes of limitation, by general and special demurrers and exceptions and by general denial and by a special plea that appellee had entered into an agreement with the said M. J. Talley and O. B. McKnight and J. T. House to organize the corporation referred to in appellant's pleading with the understanding that they were to furnish their services and that appellee would furnish the necessary capital for the operation of the affairs of said corporation and that the four would share equally in the stock therein and the profits therefrom; that in furtherance of said agreement appellee had purchased said land and had advanced additional sums as expenses incident to the organization and promotion of said cemetery enterprise which sums were to be repaid to appellee with 8 per cent interest; that appellee and the said Talley, McKnight and House had executed a contract dated September 11th, 1928, by the terms of which it was mutually agreed that, when the capital furnished by defendant was returned to him with 8 per cent interest, the stock in said corporation would be divided equally between them so that each of said parties would have a one-fourth interest in the capital stock in said corporation.

At the conclusion of appellant's evidence, appellee, without offering testimony in his own behalf, presented a motion for an instructed verdict in his favor which motion was granted. Appellant bases its appeal on the action of the court in instructing a verdict in favor of appellee and in rendering judgment thereon.

The record shows that sometime prior to the execution of the contract of September 11th, 1928, House, McKnight and Talley had discussed with Swilley a plan for organizing a corporation to own and operate a cemetery and that Swilley in pursuance of said plan had purchased in his own name 60 acres of land selected by them as suitable for their purpose. On September 4th, 1928, Swilley, Talley, House, McKnight and J. E. Walton executed an affidavit to be filed with the Secretary of State for the purpose of procuring a charter for Rest Haven Cemetery in which they stated that they were the identical parties who had executed said charter as incorporators, and that Swilley had subscribed $9960 of the capital stock of $10,-000 of said corporation and had paid one-half of said sum therein in cash, and that each of the other subscribers had subscribed $10 thereof and had paid $5 thereof in cash. On September 8, 1928, the charter of said corporation was issued and on September 11th, 1928, Swilley conveyed said 60 acres of land to appellant retaining a vendor's lien to secure the payment of one certain vendor's lien note for the sum of $7718 bearing interest at the rate of 8 per cent per annum and payable to W. S. Swilley or order on or before two years after its date. On the same date House, Talley, McKnight and Swilley entered into the following contract:

"The State of Texas
"County of Harris
"Know All Men by These Presents:

"This memoranda of an agreement made and entered into this day, by and between W. S. Swilley, hereafter designated as Party of the First Part, and M. J. Talley, J. T. House and O. B. McKnight, hereinafter designated as Parties of the Second Part.

"Witnesseth:

"That, whereas, the Party of the First Part has this day sold and conveyed to Rest Haven Cemetery, a private corporation, duly organized under the laws of the State of Texas, a tract of 60 acres of land out of the Peter F. Craft Survey, in Harris County, Texas, retaining a Vendor's lien to secure the payment of one certain promissory note for the principal sum of $7718.00, bearing interest from its date at the rate of 8% per annum, interest payable semi-annually, said note being due and payable to W. S. Swilley, or order, at Houston, Texas, on or before two years after its date; and,

"Whereas, the capital stock of said corporation is divided into 1000 shares of the par value of $10.00 each and the said Party of the First Part had had issued

to him 996 shares of said stock and the Parties of the Second Part have each received one share of said stock; Now, Therefore:

"It is agreed by and between the parties hereto as follows:

"The Party of the First Part hereby agrees and binds himself, upon the payment in full to him of the principal sum of above described note, together with all interest thereon within the time above specified, and upon the performance, by the Parties of the Second Part, of all of the agreements and stipulations as hereinafter set forth, that he will transfer unto said Second Parties an amount of the capital stock of said Cemetery, that, together with the share now held by each of the Second Parties, will equal a one-fourth interest in the capital stock of said company, so that each of the four parties hereto will have a one-fourth interest in and to said stock.

"The said Second Parties hereby agree and bind themselves to perform all of the work connected with the sale of lots in said Cemetery and said corporation is to assume and pay all expenses connected therewith.

"The Party of the First Part hereby agrees to release any lot in said Cemetery from the operation of the Vendor Lien aforesaid, upon the payment to him of the sum of Twelve and 50–100 ($12.50) in cash.

"In testimony whereof the parties have hereunto set their hands in quadruplicate on this the 11th day of September, A.D. 1928.

"W. S. Swilley,
    "Party of the First Part.
"M. J. Talley,
"O. B. McKnight,
"J. T. House,
    "Parties of the Second Part."

On January 20th, 1930, the last payment on the principal of said $7718 note, referred to in said contract, was paid. During the period from September 11th, 1928, and January 29th, 1930, the sum of $691.08 was paid by appellant as interest on said note. Between the period of January 12th, 1929, and October 15th, 1932, Swilley, McKnight, House and Talley each received the sum of $5321 in cash from appellant as salary and 66½ lots in Rest Haven Cemetery, in lieu of additional salary. The deed to said lots was dated October 20th, 1930. The record further shows that on August 23, 1929, appellant borrowed an additional sum of $2500 from appellee for which it executed its note payable in ninety days and on December 7th, 1929, it borrowed an additional sum of $500 from appellee. This loan was merged with said loan of $2500 and a new note for the sum of $3,000 was executed by appellant in favor of appellee payable in ninety days. Later said $3,000 note was renewed and extended and its payment was secured by liens on the cemetery property. This note for $3,000 is unpaid.

On June 12th, 1930, the capital stock of said corporation was divided equally between Swilley, McKnight, House and Talley, 250 shares being issued to each. The original petition in this action was filed April 5th, 1934.

It is the contention of appellant that the contract of September 11th, 1928, is, on its face, a contract for usury and therefore void; that the 250 shares of the capital stock of said corporation issued to appellee and the sums totalling $5,321 and the 66½ lots conveyed to appellee in said cemetery, as salary, in addition to the 8 percent interest stipulated in the face of the note for $7,718 grew out of said contract and constituted compensation for the loan and use of monies advanced by appellee.

The controlling question involved in this appeal is whether the parties, by the terms of the contract of September 11th, 1928, intended to provide a means whereby appellee, W. S. Swilley, could collect from appellant, Rest Haven Cemetery, interest or compensation for the use or detention of the $7718 represented by said note for that amount, at a rate of interest in excess of 10 per cent per annum.

Article 5069, R.C.S., defines usury as "interest in excess of the amount allowed by law," to-wit: Ten per cent per annum and provides that "all contracts for usury are contrary to public policy and shall be void."

Article 5071, R.C.S., provides "the parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten per cent per annum on the amount of the contract; and all written contracts whatsoever, which may in any way, directly or indirectly, provide for a greater rate of interest shall be void and of no effect for the amount or value of the interest only; but the principal sum of

money or value of the contract may be received and recovered."

Article 5073, R.C.S., provides that "Within two years after the time that a greater rate of interest than ten per cent shall have been received or collected upon any contract, the person paying the same or his legal representative may by an action of debt recover double the amount of such interest from the person, firm or corporation receiving the same."

An analysis of the contract in question in connection with the undisputed facts surrounding its execution indicates an intention on the part of all parties thereto to provide additional security for the payment of said note and to provide a definite plan for the distribution and ownership of the capital stock of said corporation, after the payment of the principal and interest due on said note. The interest was definitely fixed at 8 per cent. The contract made no provision for collecting an additional sum.

■ It is a rule of universal application that where a contract is capable of two interpretations, one rendering it void and the other valid, the latter will always be adopted. Federal Mortgage Co. et al. v. Davis, Tex.Civ.App., 100 S.W.2d 717; Texas Employers' Insurance Association v. Tabor, Tex.Com.App., 283 S.W. 779.

The general rule is stated in 6 R.C.L. p. 839, Sec. 229, as follows: "If a contract is of doubtful meaning, and one construction would make it legal and another illegal, the courts will adopt that construction which will not impute to the parties an intention to violate the law. Presumptions of the law are in favor of the good faith of all parties to a business transaction, and if the language of a contract is fairly susceptible of a construction or explanation which renders it valid and enforceable, according to its terms, such construction will be adopted in preference to one which brands it with illegality and makes it possible for one to repudiate the performance of his promise while demanding full payment of the consideration to be given therefor." Federal Mortgage v. Davis, Tex.Civ.App., 100 S.W.2d 717; Bankers Life Co. v. Miller, Tex.Civ.App., 68 S.W.2d 574; Marble Savings Bank v. Davis, 124 Tex. 560, 80 S.W.2d 298.

■ It is further held in the case of Federal Mortgage Co. v. Davis, supra [100 S.W.2d 721]: "An unlawful intent will not be imputed where a lawful one may just as consistently be imputed. To constitute usury, there must exist an agreement requiring the borrower to pay, and entitling the lender to receive, a higher rate of interest than that allowed by statute (Vernon's Ann.Civ.St. Art. 5069) for the loan or forbearance. * * * A loan contract cannot be considered a scheme, device, or subterfuge set up for the purpose of collecting usurious interest, unless the borrower is required, or in a named contingency may be required, to pay more than 10 per cent. per annum for the use of money borrowed."

■ The case of Continental Savings and Building Association v. Wood et al., Tex.Civ.App., 33 S.W.2d 770, 773, lays down the following general rule: "There can be no usury without a contract therefor. The mere fact that the creditor subsequently to the contract of loan or forbearance actually took or received more than legal interest does not render usurious the previously valid contract." Continuing and citing the case of Dunlap v. Chenoweth et al., 88 N.J.Eq. 496, 104 A. 822: "A corrupt bargain, to contravene the statute, is essential to sustain the plea of usury. Withholding of a part of the loan as a bonus, without a previous agreement to that effect, does not constitute usury."

■ Under the above authorities appellant will not be permitted to predicate the recovery of a penalty for the violation of the usury statute upon the facts herein relied on, since the existence of a contract to pay usurious interest is an essential element of an action to recover the penalty for the receipt thereof or to render a contract void therefor. The fact that subsequent to the execution of said contract appellee demanded and received certain sums and certain lots as salary or that prior to the execution of said contract an agreement was made by the terms of which he was to receive certain stock in said corporation does not render the contract of September 11th, 1928, usurious.

■ The facts are uncontroverted that the certificate for 250 shares of the capital stock of Rest Haven Cemetery was issued to appellee on June 12th, 1930. Plaintiff's original petition in this suit was filed April 5th, 1934, a period of more than three years subsequent to the date of the issuance of said stock.

In the case of Joy v. Fidelity Finance Company, Tex.Civ.App., 60 S.W.2d 1041, the court in its opinion says: "The doctrine is also settled [in this state] that a cause of action to recover penalty under the statute arises and is fixed when usurious interest is collected; hence it follows that the statute of limitation is put in operation from the date of such payment. The statute (article 5073, R.S.1925) provides that: 'Within two years after the time that a greater rate of interest than ten per cent shall have been received or collected upon any contract, the person paying the same or his legal representative may by an action of debt recover double the amount of such interest from the person, firm or corporation receiving the same. * * *'" Southern Industrial Corporation v. Harris, Tex.Civ.App., 22 S.W.2d 494; Rosetti v. Lozano, 96 Texas, 57, 70 S.W. 204. Wootten v. Jones, Tex.Civ.App., 286 S.W. 680.

The Supreme Court in the recent case of Schmid v. City National Bank of Wichita Falls et al., Tex.Sup., 114 S.W.2d 854, 856, in an opinion by Justice Critz, says: "It will be noted that the above article [Article 5073, R.C.S.1925] plainly, and in no uncertain terms, provides that the person paying usurious interest, or his legal representative, 'may by an action of debt recover double the amount of such interest from the person, firm or corporation receiving the same.' The statute, however, limits the right to bring the action therein provided for to a time 'within two years' after the date or time that the usurious interest is paid. The statute is plain on this matter of limitation, and admits of no construction. * * * It follows that under the plain terms of article 5073, supra, any suit the oil company may have had for the recovery of double the amount of interest paid, as provided for in such statute, was barred by the two-year statute of limitation therein provided, at the time this suit was filed. In this connection, it is held that the right to recover double the usurious interest paid is not available unless suit is instituted within two years after the time the usurious interest is paid." Roberts et al. v. Coffin, 22 Tex.Civ.App. 127, 53 S.W. 597.

For the reasons above stated the judgment of the trial court is in all things affirmed.

Affirmed.