### GRIFFITH v. GADBERRY.

#### No. 4376.

Court of Civil Appeals of Texas. El Paso.
June 8, 1944.

Rehearing Denied June 29, 1944.

Max R. Rosenfield and Elihu E. Berwald, both of Dallas, for appellant.

Clifford S. Dillard, of Dallas, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of one of the District Courts of Dallas County in an action wherein J. L. Gadberry was plaintiff and D. T. Griffith defendant, tried before a jury. The court on the verdict returned adjudged that Gadberry recover from Griffith the sum of $462.55 and cancelled and declared discharged all notes and chattel mortgages theretofore executed by Gadberry to Griffith; further denied Griffith all relief on his cross-action. Griffith has perfected this appeal.

Gadberry sought recovery for double the amount of alleged usurious interest, which he alleged he had paid to Griffith. His petition conceded unpaid principal due Griffith and credited the amount of the double interest alleged to have been paid with the amount owing on the principal, leaving a balance in his favor of $946.14. Griffith answered by a general denial; specially answered as to part of the transactions complained of by Gadberry that same did not constitute a loan of money, but the sale of accounts by Gadberry to him at an agreed discount.

In Paragraph 11 of his answer is set up a cross-action where he lists some twenty-six notes alleged to have been executed and delivered by Gadberry to him, together with another note of Gadberry to Patterson, which he alleged he owned. Among these notes was one in the sum of $450, dated December 7, 1938, and one in the sum of $758.33; each of these notes was alleged to bear interest at the rate of ten per cent per annum. In the last paragraph of such cross-action Griffith alleged that the obligations evidenced by the notes totaled $5798.07; that on the note account Gadberry had paid the total amount of $4166.65; that the payments had been credited to notes receivable, and that none of the notes had been paid in full and there remained due thereon a balance of $1631.42.

By trial amendment, Griffith abandoned his theory as to his application of the payments made by Gadberry on the notes receivable account. In lieu thereof he alleged, in substance, that Gadberry, when such payments were made, did not direct application of the payments, and that he (Griffith) had made application of payments to the notes bearing the oldest dates; that as a result the principal of the notes described in sub-section A to U of the cross-action had been paid in full, leaving a balance of $36 on the note described in sub-section H thereof; that nothing had been paid on the notes described in Sections W, K and Y, and nothing on the Patterson note. He further pleaded that the note dated December, 1937 in the sum of $114.37 had been paid in full. He sought judgment for the alleged unpaid notes, with interest and attorney's fees, the unpaid notes alleged to aggregate $1307.09. The foreclosure of the chattel mortgage lien was sought.

The note described in sub-section W is in the sum of $172.34, dated January 20, 1940; in K, in the sum of $342.71, dated July 5, 1938; in Y, in the sum of $300, dated March 4, 1940; in V, in the sum of $75, dated January 3, 1940.

Gadberry by his pleadings claimed the Patterson note had been acquired with his funds; that the note for $758.33 was the result of a fraudulent alteration thereof while same was in the possession of Griffith; that he signed no note for $758.33, but did sign one for $158.33, and he had not authorized any alteration in the note. His contentions were substantially the same as to the $150 note.

The pleadings present a controversy arising out of two alleged concurrent and recurring sets of transactions, one involving a number of notes executed by Gadberry to Griffith, the other set arising from the assignment of accounts by Gadberry to Griffith. Griffith contended that the assignment constituted an absolute sale of the accounts to him at a discount; Gadberry, that the discount was in reality interest paid by him for the use of money. The amount of the discount or interest is established without controversy as $424.60; further, that if the transactions constituted a series of loans rather than assignments, there was still due Griffith $575.16.

Let us first consider the branch of the controversy involving the notes and the payments thereon,—consider it in the light of the uncontroverted facts, the stipulation of the parties, the verdict of the jury, and the findings of the court embodied in the judgment.

In regard to the $450 note pleaded by Griffith, the jury found that same was originally a note for $150, and same had been altered without the consent of Gadberry to read $450. A like finding was made as to the note for $758.33, except the note in that case being in the amount of $158.33. In respect to the matter of these two notes, Gadberry testified that on the respective relevant dates he signed one note for $150 and one for $158.33. Griffith did not testify, and on this trial did not produce the notes. Photostatic copies thereof were in evidence. The evidence was that these notes were at all times in the possession of Griffith. In fact, Griffith asserts, not that these findings are unsupported by the evidence, but same are immaterial. The stipulation and finding in reference to the Patterson note was that same was not the property of Griffith, but the property of Gadberry and had been fully paid.

Eliminating from consideration the Patterson note, the note for $450, and the one for $758.33, the court found on the valid notes Gadberry had overpaid on the principal the sum of $194.95, and Griffith was entitled to $54.26 interest, which was credited by the court on the $194.95 overpayment. The court further found that on a certain note, whose face was for $342.71, and on which Gadberry had only received $318.17, Gadberry had paid $23.91 as usurious interest, and allowed him a recovery of $47.82. In short, the court found on the note transactions in favor of Gadberry for the total sum of $188.77.

The only complaint of Gadberry is that the court should allow him to charge Griffith with the amount at least of the two altered notes in the respective sums of $150 and $158.33, in which event the note transactions would have resulted in a balance in his favor of about $115.23.

Gadberry admitted that he signed one note for $150 and another for $158.33 and that he received the money thereon. Under the undisputed evidence and the findings of the jury there was a material alteration in these two notes. Section 124, Article 5939, R.S.1925, is, in so far as applicable here, as follows: "Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers."

Subsection 2 of Section 125 of the same Article, declares such alteration as we have here reflected material.

Griffith is not a holder in due course of these two altered notes and not entitled to enforce them according to their original tenor. He contends, however, that same were paid, or rather the consideration for which the altered notes were given, and Gadberry was not entitled to recover back such payments.

■ It is elementary that one holding an altered negotiable instrument must show, in order to recover the consideration given for the valid unaltered instrument, his innocence of the alteration. By the same token, it would seem that one seeking to apply the payment to the debt which the unaltered instrument evidenced should show his innocence as to the alteration. In any event, where he fails to show innocence, that the payment was made and applied prior to the alteration. Even

though Griffith did not actually make the alterations on these two notes, he sought to recover on same. True, by trial amendment he abandoned this attempt. He failed to show application of the payment, and application was made by the court in accordance with the law.

To sustain a recovery on consideration for a note materially altered by payee he must show the alteration was innocently made. Benson v. Adams, Tex.Com.App., 285 S.W. 818.

■ The court, in applying the payments, may be governed by equitable considerations. Sometimes where equity in good conscience requires, payments may be applied to obligations which are unenforcible by reason of limitation or the statute of frauds. Here, there is no compelling equity that would dictate the application of the payments to the consideration received for the $150 and $158.33 notes. In fact, we think equity demanded that the court apply the payments to the lawfully enforcible obligations. After however, this is done there remains a balance of something like $140.69 voluntarily paid by Gadberry to Griffith. The judgment awarded Gadberry a recovery of this amount. In this we think there was error. Public policy, which the statute in regard to negotiable instruments reflects, denied to a payee fraudulently altering an instrument the right of recovery of the consideration paid for the unaltered instrument. However, where all or part of the true consideration has been voluntarily repaid, public policy does not demand that the maker of the instrument recover such payment. Griffith, however, is not entitled to the recovery of any unpaid balance of the consideration for which the unaltered notes were given. Gadberry had a right to repay the money received. There is nothing morally reprehensible in Griffith accepting such money. The portion of the judgment allowing recovery of the $140.69 is reversed. As stated, however, Griffith is denied recovery for the unpaid balance sought.

We come now to the second set of transactions. Here, again, our task has been simplified by the admirable and commendable manner in which the parties have presented this appeal. It is conceded, or practically conceded, by all of the parties hereto that Griffith collected, either as a discount or interest, the sum of $424.60. If it was interest, that it constituted usury,

and Gadberry is entitled to a recovery thereof doubled; if it was discount, Gadberry is indebted to Griffith in the sum of $575.16.

The transactions here involved were initiated by a contract between Gadberry and Griffith wherein Gadberry was described as "Seller," Griffith as "Factor." This contract is very long and it is not deemed necessary to set same out in full. It was intended to govern a series of transactions and was indefinite in duration. Under the contract Griffith could terminate the dealings thereunder at will; Gadberry, on condition, after thirty days' notice.

Gadberry was engaged in the business of manufacturing excelsior for sale. In substance, the contract provided Griffith was to have the privilege of buying such accounts as he elected on the following terms: accounts maturing in thirty days for 98% of their face; in forty-five days for 97%; in sixty days, 90%. Upon the acceptance of any account Gadberry was to execute an assignment, Griffith to pay him 75% of the purchase price, the balance to become due and be paid Gadberry by Griffith when the accounts matured, with this proviso: that no payment should be made of such balance so long as affected by any breach of contract or any guaranty or warranty on the part of Gadberry. In regard to the accounts, Gadberry guaranteed and warranted, among other things, that Griffith would receive at maturity the full face value of the accounts. If any discount was allowed, Gadberry should pay same to Griffith. Gadberry was to deliver to Griffith all original checks, drafts, notes, etc., received for accounts, whether same were payable to him or to Griffith. Griffith was to use all reasonable efforts to make collection of the accounts purchased. Gadberry was to invoice the goods on forms showing the assignment of the accounts; on the assignment of any accounts, Gadberry was to make entry in his books showing the absolute sale of the accounts. Upon the breach of any warranty on the part of Gadberry to Griffith, Gadberry was to purchase the accounts by paying the full face value thereof. In the event Gadberry failed to so repurchase or redeem the account, the contract provides as follows: "Seller failing to do so, Factor may evaluate the accounts by sale at public or private sale on ten days notice by registered mail, or such notice as may be required by law, to Seller, at which sale Factor may bid for and purchase accounts and the net proceeds of which sale shall be applied against the said repurchase price and Seller shall pay any deficiency and be entitled to any surplus resulting from such sale."

We have not set out all of this contract— it constitutes seven closely typed pages— but the salient features thereof are stated in substance.

Subsequent to this contract, from time to time Gadberry assigned some 201 accounts, a number of accounts were included in each assignment. On the date of the execution of the assignments, Griffith paid Gadberry 75% of the face value, less the discount. Gadberry collected in his own name the accounts and paid to Griffith 75% of the full value of the account and retained the balance. There is evidence sufficient to sustain a finding that on no occasion was the full value of the account paid to Griffith, and Griffith never exacted the reserve fund; likewise, we think it fairly inferable that the invoices sent by Gadberry to his customers failed to show any assignments, although his books showed the assignments in accordance with the terms of the contract.

There is no evidence that prior to this controversy there was any dissatisfaction on the part of either party. The controversy really arose over the transactions involving the notes. Considering the instrument as a whole, it warrants the conclusion that the parties realized that the transactions had some at least of the characteristics of an agreement for loans, and that in the light of this fact it was thought to express the intention that it was not such. Such was the purpose of the provisions as to how Gadberry should keep his books. The provision thereof with reference to the sale of the accounts by him seems to be rather anomalous. Literally, it provides that Griffith might sell to himself accounts he already owned, if the contract be construed as an outright sale of the account. A sale of property is the transference of the title by one person to another.

In Issues Seven and Eight, the court submitted to the jury issues as to whether or not the $424.60 was paid to Griffith and collected by him as interest. The finding was, it was paid and collected as interest. Appellant does not complain of the form of the issues. His contention is that the issues were not raised by the evidence.

A court in ascertaining the intention of the parties to make a usurious loan

may look beyond the written contract, and the intent may be disclosed by parol evidence. Chase & Baker Co. v. National Trust & Credit Co., D. C., 215 F. 633; In re Eby, D.C., 39 F.2d 76.

Authorities abundantly support the proposition above enunciated. It is supported by a Texas case, which will be hereafter referred to. In the two Federal cases, the opinions are by United States District Judges. Same are cited because they are the principal authorities relied upon by appellant as supporting his contention that the issues submitted as to usury were not raised by the evidence. The cases above cited have certain features in common with the case here, and several distinguishing features. Chase & Baker Co. v. National Trust & Credit Co., supra, passed off on a point of pleading. It is held that the contract on its face did not disclose usury. The contract here is in some respects a duplication of the contract there reproduced. An inference may be drawn that the contract here was in some respects modeled on the contract set forth in that case. Absent in the contract considered by the Federal Judge is a provision present here, that the so-called "Factor" may sell the accounts and account to the seller for any services. Absent also was the course of conduct indicating what the parties intended by the contract. Here, in the face of the provision that Griffith should collect the accounts, Gadberry collected same; in face of the provision that when collected, the full amount be paid Griffith, he was only paid a portion thereof. The debtors were never notified of the assignments.

We can see no essential difference in this case from that of Commercial Securities Co. v. Rea, Tex.Civ.App., 78 S.W. 2d 707; Id., 130 Tex. 11, 108 S.W.2d 872. In that case, before the court in principal was almost a parallel set of transactions. Each court declared the same usurious. We deem the contract, taken in connection with the parol evidence, to strongly support the conclusions that same was not what it seemed to be, but was in fact a mere device to conceal usury.

The holding of the trial court as to the $424.60 is approved.

While a witness for Gadberry, George D. Lacey was presented with plaintiff's Exhibit No. 6, and asked if he had ever seen that instrument prior to this time. Responding affirmatively, he was then asked: "When did you see that instrument?" He responded: "I saw that in the grandjury place or office." Counsel for appellant then requested the court to instruct the jury to disregard the answer. The court complied with the request and so instructed the jury. Counsel for appellant then moved that the court dismiss the jury because the statement was so prejudicial "that it cannot be cured by an instruction," stating in substance that the remark was of such a nature as to lead the jury to believe that defendant was being investigated or had been investigated by the grandjury. Appellee asserts that this motion was made in the presence of the jury. If the response of the witness had any tendency to prejudice the appellant, we think same was cured by the instruction of the court. Furthermore, the counsel for appellee could not have had any purpose to elicit this response from the witness. The question was as to when the witness had seen the instrument. The response was as to where the witness had seen the instrument. Now the response, in and of itself, did not indicate whether it was Gadberry or Griffith who was being investigated by the grandjury. It does not necessarily imply that either one was being investigated. We think the action of the trial court was timely and proper, and error is not reflected.

Appellee urges what he denominates as an "Independent Point," as follows: "The amount of money judgment which appellee is entitled to recover is the sum of $948.14, since the evidence indisputably shows that $431.23 paid on the notes during the past two years was paid and applied as usurious interest."

Without deciding whether, under the Rules, appellee has a right to so present an alleged error in the court's judgment, we shall consider same.

The face of the notes in question do not show usury. There is no evidence, except as to the note on which the penalty for usury was allowed, that there was any contract calling for the payment of usury. The mere collection or acceptance of money on a promissory note beyond what is due, does not constitute usury. Continental Savings & Building Ass'n v. Wood, Tex. Civ.App., 33 S.W.2d 770; Rest Haven Cemetery v. Swilley, Tex.Civ.App., 127 S.W.2d 996; Federal Mortgage Co. v. Davis, Tex.Civ.App., 100 S.W.2d 717;

744

Goode v. Davis, Tex.Civ.App., 135 S.W.2d 285; Greever v. Persky, Tex.Civ.App., 156 S.W.2d 566.

Appellee's Independent Point is overruled as without merit.

It is ordered that that portion of the judgment awarding a recovery in favor of Gadberry against Griffith in the sum of $462.55 be reversed and judgment entered adjudging that Gadberry recover of Griffith $321.86; otherwise, the judgment is in all things affirmed.